BRIARPATCH LIMITED, L.P. and
Gerard F. Rubin, Plaintiffs,

v.

Stephen V. PATE, Defendant.

No. 99 Civ. 8968(RWS).

United States District Court,
S.D. New York.

Jan. 20, 2000.

Deyan Ranko Brashich, New York City, Barry L. Goldin, Allentown, PA, for plaintiff.

Dewey Pegno & Kramarsky, New York City by David S. Pegno, Wilshire Scott & Dyer, Houston, TX by Keavin D. McDonald, of counsel, for defendant.

## OPINION

SWEET, District Judge.

Plaintiffs Briarpatch Limited L.P. ("Briarpatch" or the "Partnership") and Gerard F. Rubin ("Rubin") (collectively, "Plaintiffs") have moved, pursuant to Rule 19, Fed.R.Civ.P., and 28 U.S.C. 1447(e), to amend their complaint, add necessary parties, and remand the action to the Supreme Court of the State of New York,

New York County. Defendant Stephen V. Pate ("Pate") has moved, pursuant to Fed. R.Civ.P. 12(b)(2), to dismiss the complaint for lack of personal jurisdiction. For the reasons set forth below, Plaintiffs' motion will be granted. Because the action will be remanded for lack of subject matter jurisdiction, Pate's motion to dismiss will not be addressed.[1]

### The Parties

Plaintiff Briarpatch is a limited partnership.

Plaintiff Rubin is the sole limited and winding up partner of Briarpatch.

Defendant Pate is a Texas resident and citizen.

### Background and Prior Proceedings

A "briar" (or "brier") is "a plant ... with a woody thorny or prickly stem" or "a mass or twig of these." Webster's New Collegiate Dictionary 138 (1977). A "briarpatch" is thus a kind of thorny, tangled thicket, an apt metaphor for the jurisdictional thicket the instant motion requires this Court to chop through.[2]

Briarpatch was formed on January 1, 1994 between Rubin, as sole limited partner, and five general partners—Briarpatch Construction Corp., Briarpatch Film Corp., Briarpatch Releasing Corp., Briarpatch Theater Corp., and Sansho Company, Inc. (the "General Partners")—for the primary purpose of developing motion pictures or stage plays from certain literary properties. The General Partners were incorporated under New York law, each had its principal place of business in New York, and each at all times was owned and controlled by Robert Geisler ("Geisler")

---

1. Pate, of course, can raise the personal jurisdiction issue before the New York Supreme Court.

2. Plaintiffs, who did not submit a memorandum of law in support of their motion, have not exactly aided the Court in finding its way through the thicket. Indeed, willful failure to submit a memorandum can be grounds for denial of the motion under Southern District Local Rule 7.1. Nevertheless, since it would

be a tremendous waste of judicial resources for this Court to deny the motion and proceed with the case, only to have the Court of Appeals vacate any final determination by ruling (on the grounds that are set forth within) that subject matter jurisdiction is lacking and ordering remand to the state court, the Court declines to exercise its discretion to dismiss the motion on such basis.

and John Roberdeau ("Roberdeau"), who were at all times the directors and key officers of the General Partners. Each of the General Partners was dissolved by proclamation of the Secretary of State of New York at various dates between June 24, 1992 and September 24, 1997.

In December 1998, Plaintiffs filed suit in New York Supreme Court against Geisler and Roberdeau (the "1998 New York Action"), alleging causes of action for fraud and fraudulent concealment, breach of fiduciary duty, conversion and trover, unjust enrichment, and an accounting with respect to the misappropriation and diversion by Geisler and Roberdeau of rights, properties, receipts, remuneration, and opportunities belonging to the Partnership.

On March 1, 1999, Judge Gammerman issued a preliminary injunction (the "March 1, 1999 Injunction") in favor of Plaintiffs in the 1998 New York Action. The injunction found that the Partnership's projects included, among other things, "The Thin Red Line," "The White Hotel," "The English Speaker," and "Sansho the Bailiff." Geisler and Roberdeau were enjoined from transferring, pledging, hypothecating, or otherwise disposing of any rights to or in the projects. A copy of the transcript of the March 1, 1999 hearing was filed by Plaintiffs with and recorded in the United States Copyright Office on March 19, 1999 at volume 3422, pages 454–55.

On July 12, 1999, following a five day trial, Judge Tompkins issued a decision (the "July 12 New York State Court Decision") finding for Plaintiffs on their fraud and fraudulent concealment, breach of fiduciary duty, and conversion and misappropriation claims. Judge Tompkins also found that as of January 1, 1994, the Partnership became the beneficial owner of all rights to "The Thin Red Line," "The White Hotel," "The English Speaker," "Sansho the Bailiff," "Secret Friends," and "Sunday in the Park with George," (the "Projects") that all rights acquired thereafter with respect to the Projects also belonged to the Partnership, and that those rights had vested.

Meanwhile, in August 1997, Pate brought an action in Texas state court (the "Texas Action") against Geisler Roberdeau, Inc., Briarpatch Film Corp., Geisler, and Roberdeau (the "Texas Defendants"). That action arose out of investments made by Pate beginning in 1995 to entities controlled by Geisler and Roberdeau involved in motion picture production. Pate ultimately invested $748,281.81 in these projects. The complaint set forth a two-year scheme by Geisler and Roberdeau to induce Pate to advance these sums for the production of "The Thin Red Line," a feature film. The complaint further alleged that Geisler and Roberdeau misled Pate about the status of the project, then transferred the rights to another entity. Pate brought claims for fraud, breach of contract, unjust enrichment, and other causes of action. The Texas Defendants removed the case to the United States District Court for the Southern District of Texas.

In late 1997, the parties in the Texas Action entered into a settlement agreement, the terms of which included provision of a promissory note by the Texas Defendants in the amount of $1,000,000 (the "Promissory Note"), secured by rights to two film projects, "The English Speaker" and "The White Hotel." The Texas Defendants represented that they had authority to grant a security interest in the collateral to Pate. Pate subsequently filed UCC financing statements with the New York Department of State and the United States Copyright Office in November 1997 recording his security interest in the properties.

The Texas Defendants later breached their obligations under the Promissory Note, which the parties resolved by entering into a consent judgment in the Texas Action in the principal amount of the Note, $1,000,000, which the court entered on July 17, 1999. Pate then sought to realize on the security for the Note, and certain oth-

er properties owned by the defendants in the Texas Action. On July 20, 1999, Pate brought an application in Texas federal court seeking a "turnover" of the Texas Defendants' non-exempt property, or, in the alternative, for a judicial foreclosure of Pate's collateral (the "Texas Application").

On July 27, 1999, Plaintiffs filed papers in the Texas Action opposing Pate's requested relief, contending that Pate's security interest was invalid and that plaintiff (in this action) Briarpatch had superior rights to the properties at issue. The Texas district court judge presiding over the action scheduled a hearing on the application for September 17, 1999, expressing a willingness to decide the question of priority. Plaintiffs were unwilling to consent to the Texas court's jurisdiction, however.

Meanwhile, Plaintiffs had filed this action in New York State Supreme Court, New York County, on July 9, 1999, seeking a declaration that Pate did not have any valid interest in the properties at issue in the Texas Action, because the Texas Defendants were not authorized to grant any such interest. However, the limited partnership agreement of Briarpatch Ltd., L.P. gave the General Partners (who were among, or controlled by, the Texas Defendants) the "unrestricted right to sell or assign, and to pledge, mortgage or otherwise hypothecate, any Project, either in whole or in part, without obtaining the consent of Rubin." (Goldin Aff. Exh. 1 Attach. 1 ¶¶ 3.1–3.2.) Rubin also acknowledged in the agreement that "he does not and shall not have any right, title or interest of any kind whatsoever in or to any Project (including, without limitation, any copyrights or any income derived therefrom)" and agreed that the general partners of the partnership could register its copyrights in "such party as Briarpatch in its sole business discretion may determine proper." (*Id.* ¶¶ 4.1–4.2.)

The Briarpatch Ltd., L.P. partnership agreement also contained a broad arbitration clause, under which "[a]ny controver-

sy, claim, dispute or question arising out of, or in connection with, or in relation to, the validity, interpretation, performance or nonperformance of this Agreement, or any breach thereof, shall be determined and settled by arbitration in New York before a single arbitrator." (*Id.* ¶ 16.)

On July 22, 1999, Plaintiffs filed an amended complaint in this action, adding citations to the July 12 New York State Court Decision.

On August 16, 1999, Pate removed this action to this Court on the basis of diversity of citizenship.

On August 28, 1999, Plaintiffs filed the instant motion, seeking to add six corporations as defendants: the five General Partners, and Geisler Roberdeau, Inc. (the "New Defendants"). Geisler Roberdeau, Inc., is, like each of the General Partners, a dissolved corporation under New York law.

Plaintiffs also seek to add two new claims for relief: Conspiracy to Convert Rights and Interests, and Conspiracy to Breach Fiduciary Duty. In their proposed Second Amended Complaint, Plaintiffs allege that by July 17, 1999, Pate had been informed and was aware of the March 1, 1999 Injunction and the July 12, 1999 Decision of the New York State Supreme Court in the 1998 New York Action. Plaintiffs further allege that Pate and the other Defendants, through and with the assistance of their representatives Geisler and Roberdeau, entered into an understanding, agreement, and scheme, whereby Pate would attempt to obtain and foreclose upon rights in and to "The Thin Red Line," "The English Speaker," "The White Hotel," and "Sansho the Bailiff." Geisler and Roberdeau and their affiliates would not oppose those efforts of Pate to foreclose, and, with respect to "The White Hotel," "The English Speaker," and "Sansho the Bailiff," Pate, after acquiring title thereto, would permit Geisler and Roberdeau to manage and produce those properties. Plaintiffs further allege that Pate,

Geisler, and Roberdeau plan to share in the profits from these projects to the exclusion of Rubin and Briarpatch. Furthermore, Pate is allegedly improperly attempting to acquire rights to "Sansho the Bailiff," to which he had never been granted a security interest.

As part of the scheme, Pate allegedly did not disclose to the Texas Court either the March 1, 1999 Injunction or the July 12, 1999 Decision nor give any indication that the rights to the Projects might be the property of the Plaintiffs in this action, nor did Pate notify Plaintiffs of the Turnover Application. In all of these proceedings, Geisler and Roberdeau are alleged to have assisted Pate in his attempt to obtain turnover.

Plaintiffs also allege that not later than mid-July 1997, Pate, the General Partners, Geisler Roberdeau, Inc., and Geisler and Roberdeau conspired to breach the fiduciary duties which the General Partners, Geisler Roberdeau, Inc., and Geisler and Roberdeau owed to the Partnership by attempting to deprive the Partnership of the rights to "The Thin Red Line," "The White Hotel," "The English Speaker," and "Sansho the Bailiff."

In a supplemental affirmation filed by Plaintiffs' counsel, counsel states that it did not become aware of the conspiracy until after the filing of the First Amended Complaint, through phone conversations with Pate's local counsel in Texas, who revealed the plan under which Pate would turn over the properties to Geisler and Roberdeau to manage in return for profit-sharing.

The instant motion, to permit the filing of a Second Amended Complaint, containing the allegations described above regarding the conspiracy and seeking to add the New Defendants, and to remand the action to New York Supreme Court, was filed on August 28, 1999. Answer and reply papers were received through September 22, 1999, at which time oral argument on the motion was heard.

On November 17, 1999, an evidentiary hearing was held at which it was preliminarily established that plaintiff Rubin was, for diversity purposes, domiciled in New York. Documents subsequently submitted to the Court—principally Rubin's W-2 statements from recent years, which show a New York address—have buttressed that finding.

Oral argument on the motion to dismiss for lack of personal jurisdiction was heard on November 24, 1999.

### Discussion

If the Second Amended Complaint is permitted to be filed, the original basis for removal, diversity jurisdiction, will be destroyed, because plaintiff Rubin has been determined to be a New York domiciliary and there is no dispute that the New Defendants are, likewise, New York domiciliaries. Pate, however, opposes remand on several grounds. First, he maintains that the addition of the New Defendants constitutes fraudulent joinder in an attempt to defeat diversity. Second, he maintains that the Court nevertheless retains jurisdiction over this action because federal copyright law provides an independent basis for jurisdiction.[3] These points will be addressed in turn.

### I. Fraudulent Joinder

Section 1447(e) of Title 28 of the United States Code provides:

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or

---

**3.** In his motion in opposition, Pate also contended that Rubin and Briarpatch were domiciled in New Jersey for diversity purposes, which, if true, would preserve diversity jurisdiction even with the addition of the New Defendants. However, as indicated above, the Court determined in an evidentiary hearing that Rubin is domiciled in New York for diversity purposes. For this reason, that basis for denying the remand motion will not be considered.

permit joinder and remand the action to the State Court.

28 U.S.C. § 1447(e).

■ The decision whether to admit the new parties is within the sound discretion of the trial court. *See Wyant v. National R.R. Passenger Corp.*, 881 F.Supp. 919, 921 (S.D.N.Y.1995). District courts in this circuit have generally agreed that in exercising the discretion whether to admit new parties, "courts first consider whether joinder would be appropriate under Rule 20 [of the Federal Rules of Civil Procedure] and then proceed to weigh the competing interests in efficient adjudication and the need to protect diversity jurisdiction from manipulation." *Id.* at 922; *see also Juliano v. Toyota Motor Sales, U.S.A., Inc.*, 20 F.Supp.2d 573, 575 (S.D.N.Y.1998); *Mammano v. American Honda Motor Co.*, 941 F.Supp. 323, 324–25 (W.D.N.Y.1996).

■ Rule 20   provides, in relevant part: All persons … may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. . . .

Fed.R.Civ.P. 20(a).

Plaintiffs' First Amended Complaint did not state a cause of action against the New Defendants; it sought simply a declaratory judgment against Pate. Thus, there would be no basis for joinder under the First Amended Complaint because no "right to relief" could be asserted against the New Defendants. Moreover, a declaratory judgment as to the rights of the New Defendants in the properties would not state a cause of action, as such rights have already been adjudicated in the 1998 New York Action. However, the Second Amended Complaint, which Plaintiffs now seek to file, joins new claims (for conspiracy) as well as the New Defendants. The

conspiracy claims allege questions of law and fact common to Pate and the New Defendants and arise out of the same series of transactions or occurrences. Thus, joinder would be appropriate under Rule 20.

■ It is also necessary to consider whether "permitting joinder [under § 1447(e)] will comport with principles of fundamental fairness." *Wyant*, 881 F.Supp. at 923. The following factors are generally considered: "(1) any delay, and the reasons for the delay, in seeking to amend; (2) any resulting prejudice to the defendant; (3) the likelihood of multiple litigation; and (4) the plaintiffs' motivation in moving to amend." *Id.* (*citing Dinardi v. Ethicon, Inc.*, 145 F.R.D. 294, 297 (N.D.N.Y.1993); *Gursky v. Northwestern Mut. Life Ins. Co.*, 139 F.R.D. 279, 282 (E.D.N.Y.1991)).

Plaintiffs maintain that the reason for the delay in seeking to amend is that they only recently discovered facts supporting the claims of conspiracy. Defendants dispute this account. This dispute, however, centers around the motivation for seeking to amend, which is considered below.

The litigation is in its early stages and Pate has not demonstrated that any prejudice will result from permitting amendment.

Beyond the numerous actions which have *already* sprung from the Partnership Agreement like heads of a hydra, including, most notably, the Texas Action, there seems little likelihood that any additional multiple litigation will arise.

Thus, the sole dispositive factor is Plaintiffs' motivation to amend.

■ This Court has previously noted that
[a]lthough a court may in its discretion permit subsequent joinder of non-diverse parties thereby requiring remand to the state court in doing so a trial court should pay particular attention to the motive underlying the plaintiff's mo-

tion because he may well be inclined to add a new defendant only to have his action remanded to the state forum, the one he had originally chosen as best suited to his purposes.

*Allied Programs Corp. v. Puritan Ins. Co.*, 592 F.Supp. 1274, 1277 (S.D.N.Y.1984) (citations and internal quotation marks omitted). This comports with the more general rule that "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy". *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir.1998) (citing cases). On the other hand,

in order to show that naming a non-diverse defendant is a "fraudulent joinder" effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court. The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff.

*Id.* at 461.

Pate, without alleging that Plaintiffs have committed outright fraud in their pleadings, nevertheless claims that Plaintiffs have made no showing that they discovered the scheme upon which the conspiracy causes of action are based after submission of their First Amended Complaint. This is not required by the standard set forth above, however, and, in any event, it is contradicted by the supplemental affirmation of Plaintiffs' counsel Barry Goldin, who states that on July 29, 1999, he received a call from Pate's Texas counsel, Keavin McDonald, who informed Goldin of Pate's intention to "turn the Projects back over to Geisler and Roberdeau, who would produce or manage the Pro-

jects for Pate." (Supp. Affirm. of Barry Goldin, ¶ 10.) Resolving all factual and legal issues in favor of Plaintiffs, as is required, Pate has not demonstrated with clear and convincing evidence outright fraud.

Pate also contends, however, that Plaintiffs cannot state a cause of action against the New Defendants in state court. First, Pate contends that the conspiracy claims are not actionable under New York law. Second, he contends that the arbitration clauses preclude any possibility of relief as to all of the New Defendants save for Geisler Roberdeau, Inc., which has been determined in the 1998 New York Action to have no rights to the Projects at issue.

■■■ "Although an independent cause of action for civil conspiracy is not recognized in [New York] State, *see Plymouth Drug Wholesalers v. Kirschner*, 239 A.D.2d 479, 658 N.Y.S.2d 64, a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." *Litras v. Litras*, 254 A.D.2d 395, 681 N.Y.S.2d 545, 546 (2d Dep't 1998) (*citing Alexander & Alexander of N.Y. v. Fritzen*, 68 N.Y.2d 968, 510 N.Y.S.2d 546, 503 N.E.2d 102; *American Preferred Prescription v. Health Management*, 252 A.D.2d 414, 678 N.Y.S.2d 1; *Smukler v. 12 Lofts Realty*, 156 A.D.2d 161, 548 N.Y.S.2d 437; *Brackett v. Griswold*, 112 N.Y. 454, 20 N.E. 376). Breach of fiduciary duty and tortious interference are both colorable causes of action under the pleadings in the Second Amended Complaint, which alleges a plan to fraudulently deny Plaintiffs their rights in the Projects.

■■■ In addition, Plaintiffs have alleged sufficient facts to maintain an action for conversion. Under New York law, "[t]he elements of conversion are (1) plaintiff's legal ownership or an immediate superior right of possession to specific, identifiable personal property and (2)

defendant's exercise of unauthorized dominion over the thing in question to the exclusion of plaintiff's rights." *It's Entertainment v. Choice Entertainment, Inc.*, No. 90 Civ. 0653(RWS), 1991 WL 285615, at *10 (S.D.N.Y. Dec. 31, 1991) (*citing Aetna Casualty and Surety Co. v. Glass*, 75 A.D.2d 786, 428 N.Y.S.2d 246 (1st Dept.1980); *Independence Discount Corp. v. Bressner*, 47 A.D.2d 756, 365 N.Y.S.2d 44 (2d Dept.1975)). Pate has not demonstrated with clear and convincing evidence that Plaintiffs have not alleged an actionable underlying tort in the Second Amended Complaint.

As for Pate's next contention, that arbitration clauses will preclude joinder of the General Partner Defendants, it does not affect the joinder of Geisler Roberdeau, Inc., which was not a party to an arbitration clause and which is alleged to have committed the acts of conspiracy added in the Second Amended Complaint. As for the other New Defendants, although neither the Second Circuit nor, apparently, any district court in this circuit, has addressed the issue, a federal district court in Alabama has considered the precise question at issue here, and has determined that two defendants were not fraudulently joined in that case merely because the plaintiff had a binding arbitration agreement with them. *See Frank v. American General Finance, Inc.*, 23 F.Supp.2d 1346, 1349 (S.D.Ala.1998). The *Frank* court held that the citizenship of those defendants could not "be simply ignored in order to find the requisite diversity jurisdiction to support defendants' removal of this action from the state court." *Id.* at 1351. The court then remanded the case to the state court. *See id.*

While *Frank*, of course, is not binding on this Court, its logic is persuasive. *Frank* identified five reasons for determining that a binding arbitration agreement would not itself lead to a finding of fraudulent joinder. First, "the mere existence of an arbitration agreement does not divest a court, state or federal, of jurisdiction." *Id.*

at 1349. Second, "the existence of an arbitration agreement between a plaintiff and a defendant does not necessarily mean that all of the plaintiff's claims against that defendant are arbitrable under the agreement." *Id.* Third, " '[C]ourts, not arbitrators, ordinarily will decide whether or not a particular dispute is arbitrable.' " *Id.* (*quoting Scott v. Prudential Securities, Inc.*, 141 F.3d 1007, 1011 (11th Cir.1998)). Fourth, "the right to arbitrate is a waivable right which the defendant may waive intentionally or even negligently by failing to assert it timely or some other 'default in proceeding with such arbitration.' " *Id.* at 1350 (*quoting* 9 U.S.C. § 3). Fifth, "even an order compelling arbitration does not under the [Federal Arbitration Act] divest the court, state or federal, of jurisdiction." *Id.*

■ Because an arbitration clause between parties does not divest a court of subject matter jurisdiction over such parties, joinder of such parties to an action, which thereby defeats diversity jurisdiction in federal court, does not constitute fraudulent joinder in and of itself.

## II. *Federal Copyright Jurisdiction*

Pate also claims that remand is improper because federal question jurisdiction exists under the federal copyright laws.

■ As a threshold matter, the Court notes that Pate, in his original removal petition, did not claim federal question jurisdiction as a basis for removal. "The notice of removal generally must be filed within thirty days after the receipt of the initial state court pleading. A defendant may not amend its notice of removal after this thirty-day period to remedy a substantive defect in the petition." *Wyant*, 881 F.Supp. at 924 (*citing* 28 U.S.C. § 1446(b)). Failure to assert federal question jurisdiction as a basis for removal is a substantive defect. *See id.* (determining that defendant, which had originally asserted only diversity jurisdiction in removal petition, could not after 30–

day period assert federal question jurisdiction; case remanded to state court). Thus, on this basis alone, this Court should decline to exercise jurisdiction.

Moreover, even if Pate had asserted federal question jurisdiction as a basis for removal, such jurisdiction does not in fact exist in this case.

■■■■ Federal jurisdiction over copyright actions stems from 28 U.S.C. § 1338(a), which states that federal district courts "shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... copyrights...." However, "not every case involving federal copyright laws 'arises under' those laws such that federal jurisdiction is proper pursuant to § 1338(a)." *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 931 (2d Cir.1992).

In *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir.1964), Judge Friendly wrote that:

an action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g. a suit for infringement or for the statutory royalties for record reproduction or asserts a claim requiring construction of the Act ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough to meet this last test.

*Id.* at 828.

■■■ Here, neither the First nor the proposed Second Amended Complaint alleges claims for copyright infringement. Nor is this simply a case of artful pleading on the part of Plaintiffs to avoid federal jurisdiction. To the extent this action involves copyright at all, it involves a determination of copyright ownership determined by contracts between, on the one hand, Plaintiffs and the General Partners,

and, on the other hand, Pate and the Texas Defendants. Determination of rights to a copyright created under contract is a matter of state law. *See, e.g., Pina v. Sony Discos, Inc.*, No. 97 Civ. 6445(DAB), 1999 WL 349952, at 3 (S.D.N.Y. May 28, 1999); *Schoenberg v. Shapolsky Publishers, Inc.*, 916 F.Supp. 333, 334–35 (S.D.N.Y.1996).

Because (1) the New Defendants would not be fraudulently joined in this action under the Second Amended Complaint; (2) joinder of the New Defendants destroys diversity; and (3) there is no independent basis for federal jurisdiction under copyright, this Court lacks subject matter jurisdiction to hear the action.

### Conclusion

For the reasons set forth above, Plaintiffs' motion is granted. Plaintiffs are ordered to file their Second Amended Complaint within thirty (30) days of the date of this opinion. Immediately upon filing and service of the Second Amended Complaint, the Clerk of the Court is directed to remand the case to the New York State Supreme Court, New York County.

It is so ordered.