**BRIARPATCH LIMITED L.P. and Gerard F. Rubin, Plaintiffs,**

v.

**GEISLER ROBERDEAU, INC., Phoenix Pictures, Inc., Michael Medavoy, and Terrence Malick, Defendants.**

**No. 99 Civ. 9623(RWS).**

United States District Court, S.D. New York.

June 28, 2001.

322

See also 86 F.Supp.2d 368.

Deyan Ranko Brashich, New York City, Barry L. Goldin, Allentown, PA, for Plaintiffs.

Greenberg Traurig by Vincent H. Chieffo, Ronald D. Lefton, New York City, for Defendants Phoenix Pictures, and Morris Medavoy.

Arnold & Porter by Bruce R. Kelly, Andrew S. Ratzkin, New York City, for Defendant Terrence Malick.

## OPINION

SWEET, District Judge.

Plaintiffs Briarpatch Limited, L.P. ("Briarpatch") and Gerard F. Rubin ("Rubin") (collectively "plaintiffs") have moved to amend the complaint (1) to add two claims against defendant Terrence Malick ("Malick"); (2) to add the law firm of Frankfurt Garbus Klein & Selz ("Frankfurt Garbus") as an additional proper, necessary or indispensable party; and (3) to conform to evidence obtained during discovery, pursuant to Fed.R.Civ.P. 15(a), 19 and 20. In addition, plaintiffs move to extend the discovery cut-off by six months. Defendants Phoenix Pictures, Inc. ("Phoenix"), Morris Medavoy ("Medavoy") and Malick oppose. For the reasons set forth below, the motion will be granted in part and denied in part.

### The Parties

Plaintiff Briarpatch is a limited partnership.

Plaintiff Rubin is the sole limited and winding up partner of Briarpatch. For purposes of diversity jurisdiction, this

Court has previously established in a related case that Briarpatch and Rubin are New York domiciliaries. *See Briarpatch Ltd., L.P. v. Pate, et al.,* 81 F.Supp.2d 509 (S.D.N.Y.2000).

Geisler Roberdeau, Inc. ("Geisler Roberdeau") is a dissolved New York corporation that has previously been dismissed as a defendant from this action. *See Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.,* No. 99 Civ. 9623(RWS), 2000 WL 235284, at *4 (S.D.N.Y. March 1, 2000).

Defendant Phoenix Pictures, Inc. ("Phoenix") is a producer of motion pictures incorporated in California.

Defendant Morris "Mike" Medavoy[1] is the founder and chairman of Phoenix, and resides in California.

Defendant Terrence Malick[2] is a writer and director who resides in France. His films include "The Thin Red Line," "Badlands," and "Days of Heaven."

### Background and Prior Proceedings

The background and procedural history of this case has been set forth in a prior opinion of this Court, familiarity with which is assumed. *See Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.,* No. 99 Civ. 9623(RWS), 2000 WL 235284 (S.D.N.Y. March 1, 2000). This action is related to *Briarpatch Ltd., L.P. v. Pate,* 81 F.Supp.2d 509 (S.D.N.Y.2000) (the "Pate Action"), and to *Briarpatch Ltd., L.P. v. Stage Fright LLC et al.,* 86 F.Supp.2d 368 (S.D.N.Y.2000) (the "Stage Fright Action"). Plaintiffs are identical in each of these actions, which originated in New York State Court and have made their way back and forth between the state courts and this Court repeatedly over the last several years.

Plaintiffs filed the first action in New York State Supreme Court, New York County, on December 17, 1998 (the "1998 New York Action"), against Robert Geisler ("Geisler") and John Roberdeau ("Roberdeau"), alleging counts of fraud, breach of fiduciary duty, and other claims arising from Geisler and Roberdeau's alleged misappropriation of funds invested by Rubin with Briarpatch for the purpose of developing certain motion picture and theatrical properties. *See Pate,* 81 F.Supp.2d at 511. On July 12, 1999, after a trial, the New York State Supreme Court issued a decision in favor of plaintiffs, finding, *inter alia,* that "The Thin Red Line," "The English Speaker," and "Sansho the Bailiff" were projects belonging to the Briarpatch limited partnership, not to Geisler, Roberdeau, their affiliated companies, or the Briarpatch general partners.

The complaint in the instant action (the "Complaint") alleges that Rubin contributed at least $750,000 for development of the "Thin Red Line" project, including funds to acquire the film rights to the underlying novel of the same name by James Jones, and to pay for writing and development of the screenplay by Malick; $500,000 for the "English Speaker" project, including funds for Malick's writing of the screenplay; $1,200,000 for the "Sansho the Bailiff" project, including funds for Malick's writing of the stage play; and $2,000,000 for the "White Hotel" project, including funds to acquire rights to the novel of the same name by D.M. Thomas and to pay for screenplay adaptations by Dennis Potter and others, and for revisions by Chuck Mee.

The Complaint further alleges that Malick knew his fees for work on these projects from 1989 through January 1, 1994

---

1. Medavoy is incorrectly named in the complaint as Michael Medavoy.

2. The Complaint inaccurately spells his first name as "Terence."

were paid with funds provided by Rubin, not Geisler or Roberdeau. Medavoy is alleged to have entered into an agreement with Geisler and Roberdeau in March 1995, under which Medavoy loaned Geisler and Roberdeau $100,000, which would be repaid from the first revenues received with respect to rights to "The Thin Red Line," "The English Speaker," and "The White Hotel." Medavoy is also alleged to have known that the funding for these projects had been provided by Rubin, not Geisler or Roberdeau. Defendants are further alleged to have entered into a scheme by early 1996 to cut Rubin and Briarpatch out of the "Thin Red Line" project. Phoenix acquired the rights to the project by paying Geisler Roberdeau approximately $1,500,000, of which $600,000 were allegedly "producer fees" even though Phoenix allegedly did not intend to use Geisler or Roberdeau as producers. Phoenix also hired Malick to direct the film.

Malick also allegedly failed to produce a rewrite of "Sansho the Bailiff" and, as a condition to being hired to direct "The Thin Red Line," required that restrictions be placed on use of "Sansho the Bailiff."

Finally, it is alleged that Malick and Geisler Roberdeau entered into an agreement on October 1, 1996 to give Malick an eight-and-one-half year exclusive option to direct "The English Speaker," without consideration, thereby devaluing the rights to the project. Again, this option was alleg-

edly required as a prerequisite to Malick's agreeing to direct "The Thin Red Line."

None of the activities described above was ever disclosed to Rubin, allegedly because of a desire on the part of defendants to conceal Geisler and Roberdeau's diversion and misappropriation of funds.

The Complaint, which was filed in New York State Court on August 18, 1999, alleges causes of action for conspiracy to breach fiduciary duty, aiding and abetting breach of fiduciary duty, trover and conversion, unjust enrichment, a declaratory judgment as to rights to the various projects, and breach of contract.

Phoenix filed a notice of removal on September 10, 1999, on the basis of federal question and diversity of citizenship grounds. Medavoy joined in the removal on September 17, 1999. Plaintiffs moved on October 12, 1999 to remand the action to New York Supreme Court. The motion was denied on the grounds that Geisler Roberdeau had been fraudulently joined, and Geisler Roberdeau was dismissed from the action,[3] leaving complete diversity between the parties as the foundation for this Court's exercise of jurisdiction. *See Geisler Roberdeau, Inc.*, No. 99 Civ. 9623(RWS), 2000 WL 235284, at *4.[4]

On January 12, 2001, plaintiffs filed the instant motion, which seeks to amend the complaint. First, they seek to allege two new conversion causes of action against

---

3. It is relevant to note here that the plaintiffs reinitiated their action against Geisler, Roberdeau, and Geisler Roberdeau in the New York Supreme Court after that decision. In what has become a predictable response, those defendants promptly removed that action to this Court. Plaintiffs' unopposed motions to remand both that action and a newly-removed *Pate* action were granted on June 6, 2001. *See Briarpatch v. Geisler*, No. 01 Civ. 2339(RWS), *Briarpatch v. Pate*, No. 01 Civ. 2340.

4. The remaining defendants argue that, even if the motion is granted and diversity fails, this Court will retain federal question jurisdiction arising out of the Copyright Act because the action essentially concerns derivative rights related to a copyrighted work. The Court declined to reach this question in the prior opinion. *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, No. 99 Civ. 9623(RWS), 2000 WL 235284, at *4.

Malick for failing to deliver a copy of the "Sansho the Bailiff" stage play and "The English Speaker" screenplay.

Second, plaintiffs seek to add Frankfurt Garbus as a necessary party in light of new information about their alleged involvement in the scheme which the defendants recently produced in discovery.[5] Some time after Rubin formed plaintiff Briarpatch Limited L.P. by agreement with the other Briarpatch entities (the "Named General Partners") on January 1, 1994, Frankfurt Garbus was hired as counsel for the named General Partners. As the Named General Partners, Geisler and Roberdeau were fiduciaries of Briarpatch and Rubin, and the plaintiffs argue that counsel for the Named General Partners, Geisler and Roberdeau, Frankfurt Garbus, was also a fiduciary to the plaintiffs. Plaintiffs contend that Frankfurt, Garbus not only knowingly negotiated contracts with the other defendants, which deprived the plaintiffs of their contractual right to exclusive remuneration for the Projects, but also fraudulently concealed these acts from the plaintiffs, in violation of fiduciary duty and various New York laws.

Third, the plaintiffs seek to assert two new causes against defendants Phoenix, Malick and proposed defendants Frankfurt Garbus, for "conspiracy to commit conversion and trover with respect to 'The Thin Red Line,' 'Sansho the Bailiff,' and 'The English Speaker,'" and for aiding and abetting the same. (Proposed First Amended Complaint ("PFAC") ¶¶ 175–180, 181–185.)

Malick has opposed the motion on the grounds of futility, and Phoenix and Medavoy oppose on the grounds of undue delay, destruction of diversity jurisdiction, and irreparable prejudice.

*Discussion*

Disposition of the motions was deferred pending related proceedings in the Bankruptcy Court in Dallas, Texas, in which it was hoped that settlement could be achieved. This hope perished on May 29, 2001, according to the Bankruptcy Judge, the Honorable Steven A. Felsenthal.

## I. *Relevant Legal Standards*

### A. *Amending a Complaint Pursuant to Rule 15(a)*

Rule 15(a) provides that a party may amend a pleading only by leave of the court if more than 20 days have passed after the pleading is served, and that leave shall be "freely given if justice so requires." Fed.R.Civ.P. 15(a). The Supreme Court has, however, interpreted Rule 15 to permit such amendments only when (1) the party seeking the amendment has not unduly delayed, (2) when the party is not acting in bad faith or with a dilatory motive, (3) when the opposing party will not be unduly prejudiced by the amendment, and (4) when the amendment is not futile. *See Grace v. Rosenstock,* 228 F.3d 40, 53 (2d Cir.2000) (*citing Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). Although mere delay, absent bad faith or undue prejudice, does not provide a basis for denial of leave to amend, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993). Finally, delay as a predicate for a finding of bad faith is a sufficient reason to deny leave to amend. *See, e.g., Vine v. Beneficial Finance Co.,* 374 F.2d 627, 637 (2d Cir.), *cert. denied,* 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967). In cases

---

**5.** Notably, adding Frankfurt, Garbus as a necessary party would defeat diversity jurisdiction, as both plaintiffs and Frankfurt, Garbus are New York domiciliaries.

"where ... a considerable amount of time has passed between filing the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for [its] neglect and delay." *Sanders v. Thrall Car Mfg. Co.*, 582 F.Supp. 945 (S.D.N.Y.1983), *aff'd*, 730 F.2d 910 (2d Cir.1984).

██ In determining prejudice, courts must examine whether the opposing party will be required to expend significant additional resources, whether amendment will significantly delay disposition, and the movant's ability to bring a timely claim in another jurisdiction. *See Block* 988 F.2d at 350. Prejudice is particularly likely where the amendment raises new theories of recovery or would require additional discovery. *See Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir.1998).

### B. *Joinder*

Plaintiffs seek to join Frankfurt Garbus as "additional proper, necessary, or indispensable parties" pursuant to Rules 15 and 19 or 20. As the motion has been brought post-removal, it is governed by section 1447(e) of Title 28 of the United States Code provides:

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State Court.

28 U.S.C. S 1447(e).

██ The decision whether to join new parties is within the sound discretion of the trial court. *See Wyant v. National R.R. Passenger Corp.*, 881 F.Supp. 919, 921 (S.D.N.Y.1995). District courts in this circuit have generally agreed that in exercising the discretion whether to admit new parties, "courts first consider whether joinder would be appropriate under Rule 20

and then proceed to weigh the competing interests in efficient adjudication and the need to protect diversity jurisdiction from manipulation." *Id.* at 922; *see also Juliano v. Toyota Motor Sales, U.S.A., Inc.*, 20 F.Supp.2d 573, 575 (S.D.N.Y.1998); *Mammano v. American Honda Motor Co.*, 941 F.Supp. 323, 324–25 (W.D.N.Y.1996).

Rule 20 provides, in relevant part:

> All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action ....

Fed.R.Civ.P. 20(a). The proposed claims against Frankfurt Garbus, whom plaintiffs claim to have had a direct legal relationship with them, are in some respects distinct from those raised against the other defendants, who had only an indirect relationship with the plaintiffs. However, as some common factual and legal questions exist, Frankfurt Garbus could be added pursuant to Rule 20.

██ It is also necessary to consider whether "permitting joinder [under § 1447(e)] will comport with principles of fundamental fairness." *Wyant*, 881 F.Supp. at 923. The following factors are generally considered: "(1) any delay, and the reasons for the delay, in seeking to amend; (2) any resulting prejudice to the defendant; (3) the likelihood of multiple litigation; and (4) the plaintiffs' motivation in moving to amend." *Id.* (*citing Dinardi v. Ethicon, Inc.*, 145 F.R.D. 294, 297 (N.D.N.Y.1993); *Gursky v. Northwestern Mut. Life Ins. Co.*, 139 F.R.D. 279, 282 (E.D.N.Y.1991)).

## II. *Plaintiffs May Not Add The Proposed Conversion or Related Conspiracy or Aiding and Abetting Claims*

■ The tort of conversion is the "exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession." *Lopresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir.1997) (citation omitted); *see Vigilant Ins. Co. of America v. Housing Auth. of El Paso, Texas*, 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995). The plaintiff asserting a conversion claim must allege that it had "ownership, possession or control of the [property] before its conversion," *ESI, Inc. v. Coastal Power Production Company*, 995 F.Supp. 419, 433 (S.D.N.Y.1998) (*citing Aramony v. United Way*, 949 F.Supp. 1080, 1086 (S.D.N.Y.1996)). Failure to return documents to their owner may support a conversion claim, "especially if the originals were missing," *Comprehensive Community Development Corp. v. Lehach*, 223 A.D.2d 399, 636 N.Y.S.2d 755, 756 (1996); *see also MacGregor v. Watts*, 254 A.D. 904, 5 N.Y.S.2d 525 (N.Y.App. Div.1938) (upholding conversion action by author of plays against defendant who failed to return scripts that had been entrusted to him for production).

Malick opposes the addition of the conversion claims against him on the grounds that (1) they merely duplicate the breach of contract claims already enumerated, and that (2) the plaintiffs did not "own" the scripts themselves, but assert at most a contractual right to *develop* them.

■ New York law is clear in barring claims for conversion where damages are merely sought for breach of contract. *See In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir.1993) (holding that a tort claim will not arise where plaintiff is essentially seeking enforcement of the bargain); *Fraser v. Doubleday & Company, Inc.*, 587 F.Supp. 1284, 1288 (S.D.N.Y.1984); *Matzan v. Eastman Kodak Co.*, 134 A.D.2d 863, 863, 521 N.Y.S.2d 917, 918 (N.Y.App. Div.1987).

■ For a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some "wrong" that is separately actionable. *See Elma RT v. Landesmann Int'l Marketing Corp.*, No. 98 Civ. 3662(LMM), 2000 WL 297197, *3 (S.D.N.Y. March 3, 2000); *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) (holding that a defendant may be liable in tort where it breaches a duty of reasonable care distinct from its contractual obligations, and where it engages in tortious conduct separate and apart from its failure to fulfill its contractual obligations).

■ In this case, there is an argument to be made that by withholding the scripts, Malick not only violated his agreement with the plaintiffs, but also deprived them of valuable material over which they asserted certain ownership rights,[6] and

---

6. In fact, as Malick argues, the plaintiffs did not own—and never physically possessed—the actual screenplay and stage play. As such, they cannot sustain an action in conversion for two additional reasons. First, conversion is an action for the recovery of property, and it is impossible to "return" that which plaintiffs never possessed. *See DeLeonardis v. Credit Agricole Indosuez*, No. 00 CIV. 0138(HB), 2000 WL 1718543, at *5 (S.D.N.Y. Nov. 15, 2000). Second, the assertion of the mere intangible contractual right to develop scripts, rather than actual ownership of them, does not meet the ownership requirement. *See Lopresti v. Terwilliger*, 126 F.3d at 41; *cf. MacGregor*, 254 A.D. at 904, 5 N.Y.S.2d 525. Therefore, the amendment must be denied as futile because the conversion claims would be subject to a successful motion to dismiss. *See Grace*, 228 F.3d 40.

therefore committed a legal wrong distinct from the breach of contract. *See id.*, 87 N.Y.2d at 316, 639 N.Y.S.2d 283, 662 N.E.2d 763. Nonetheless, this theory is not born out by the proposed pleadings. By amending the complaint to add conversion claims, the plaintiffs do not seek to have Malick return the two plays, but seek only damages for the conversion in an amount equal to the amount they seek for breach of contract. (Prop. Amd. Compl. ¶ 5, 8 and 9.) Under these circumstances, where the remedy for the proposed claims would merely duplicate that already sought, the addition of new claims is not warranted. *See In re Chateaugay Corp.*, 10 F.3d at 958.

Moreover, none of the cases cited by plaintiffs involves the factual scenario presented here, where a party with alleged rights to develop a script—or, put more generally, with rights to make use of property—was allowed to sustain a conversion action against another. In *MacGregor*, for example, the plaintiff had written, and in fact owned, the scripts at issue. 254 A.D. 904, 5 N.Y.S.2d 525. In *Curtis Mfg. Co., Inc. v. Plasti–Clip Corp.*, 888 F.Supp. 1212, 1233 (D.N.H.1994), which does not bind this court, a counterclaim for conversion was upheld under New Hampshire law where the plaintiffs had failed to return the written version of a design for a plastic clip, which the defendants had developed and submitted in support of a successful patent application. Although *Curtis* addressed the question whether a conversion action was cognizable to protect an intangible right in property, it is distinguishable because the claimants in *Curtis* had the full panoply of rights in the design as its inventors—both the right to fully exploit it as well as to physically possess it—before it was converted. Here, on the other hand, plaintiffs were not the authors of the works at issue and never had physical possession of the plays.

As a result, the plaintiffs may not amend the complaint to include either the proposed conversion claims, or the related claims in the seventh and eighth causes of action for conspiracy and aiding and abetting conversion.

### III. *Plaintiffs May Not Join Frankfurt, Garbus as an Additional Defendant*

In their moving papers—which notably failed to include the memorandum of law required pursuant to Local Rule 7.1 despite a prior reprimand from this Court—plaintiffs assert generally that "newly discovered evidence" recently provided them the basis for adding Frankfurt Garbus as a defendant. Not until they filed a reply, however, did the plaintiffs disclose the substance of this evidence: a January 8, 1997 letter from Geisler to an attorney at Frankfurt Garbus enclosing (among many binders of documents) the Limited Partnership Agreement between Rubin and the Briarpatch companies, which the plaintiffs belatedly received during discovery on December 22, 2000. (Goldin Reply Aff. Ex. 11 at PC 0249.)

This letter, the plaintiffs argue, is evidence that Frankfurt Garbus knew that Rubin was the principal investor for the Projects, that Rubin's investment had been contributed to Briarpatch, and that the Projects had thereby become property of Briarpatch, of which Rubin was the sole limited partner, and nonetheless assisted Geisler, Roberdeau, and the other defendants in depriving the plaintiffs of their contractual rights in the Projects. (See Goldin Aff. ¶ 15.)

However, facts sufficient to form the basis of a claim against Frankfurt Garbus were available to the plaintiffs as early as 1999. For example, in response to a December 20, 1998 subpoena, plaintiffs received in early 1999 a copy of a September

9, 1998 letter from Frankfurt Garbus to Phoenix specifically noting that Rubin "was an investor in various projects being developed by Messrs. Geisler and Roberdeau," and specifically referring to "the terms of the investment agreement." (Chieffo Aff. Ex. A.) Plaintiffs introduced this letter as an exhibit in trial of the state court action in June of 1999. (Chieffo Aff. ¶ 3, Exs. A, B.) In fact, plaintiffs acknowledge their possession of the September 8, 1998 letter, and, implicitly, its import, in Paragraph 125 of the proposed amended complaint, which alleges that Frankfurt Garbus "misrepresented ... the terms of the Limited Partnership Agreement" in the letter.

The PFAC reveals that plaintiffs were on notice of a potential claim against Frankfurt Garbus in 1999 through at least two other sources. First, Paragraph 119 asserts that a Frankfurt Garbus attorney admitted the firm's knowing role in the misconduct, and that the admission was memorialized in an affirmation dated September 22, 1997. (PFAC ¶ 119 (Frankfurt Garbus attorney stated "the deal was structured in such a way that 'any money due to [Defendants] will be paid to entities that nobody can get at.' ") Yet Phoenix produced this affirmation to the plaintiffs prior to the trial in the state court action, in early 1999. (Chieffo aff. ¶ 5.)) [7]

The defendants have demonstrated that the plaintiffs have been on notice of facts sufficient to support the proposed claims against Frankfurt Garbus for approximately 18 months—and possibly prior to filing this action in August 1999. The January 1997 letter merely adds to plaintiffs' already existing evidence of Frankfurt Garbus's knowledge and intent in connection with its representation of Geisler and Roberdeau, and dealings with the other defendants. The recent receipt of the 1997 letter does not excuse the inordinate delay in moving to add Frankfurt Garbus as a defendant. *See, e.g., Zahra v. Town of Southold,* 48 F.3d 674, 686 (2d Cir.1995) (affirming district court's denial of motion to amend brought two years after initiation of action); *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,* 921 F.2d 409, 418 (2d Cir.1990) (court may exercise its discretion more exactingly where there was undue delay and lack of good faith, because moving party ignored earlier opportunity to amend).

In addition, the tortured procedural history of this and related cases suggests that the plaintiffs had an improper motive for seeking to add Frankfurt Garbus at this juncture. The previous opinion in this case held that the plaintiffs had, after significant delay, fraudulently joined Geisler and Roberdeau in order to defeat diversity jurisdiction. *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.,* No. 99 Civ. 9623(RWS), 2000 WL 235284, at *4. As noted above, Frankfurt Garbus is a non-diverse defendant whose addition could well deprive this Court of jurisdiction. *See Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.,* No. 99 Civ. 9623(RWS), 2000 WL 235284, at *4 (declining to address copyright jurisdiction); *Briarpatch Ltd., L.P. v. Pate,* 81 F.Supp.2d at 518 (holding that "[t]o the extent this action involves copyright at all, it involves a determination of copyright ownership determined by contracts between, on the one hand, Plaintiffs,

---

7. An October 27, 1999 letter from plaintiffs' counsel to Geisler and Roberdeau's former attorneys reflects that the plaintiffs believed they had a claim against Frankfurt Garbus in connection with the "White Hotel" Project soon after the state court trial. (Chieffo Aff. ¶ 6 & Ex. C (accusing defendants of "additional misappropriation of rights and remuneration ... with the assistance of their counsel," referenced as "Tom Selz, Esq., of Frankfurt Garbus Klein & Selz."))

... and, on the other hand, ... Defendants. Determination of rights to a copyright created under contract is a matter of state law.").

Moreover, the new claims against Frankfurt Garbus are almost identical to those previously alleged against Geisler and Roberdeau. Defendants Malick, Medavoy and Phoenix each dealt only at arms length with the plaintiffs, unlike Geisler, Roberdeau, and Frankfurt Garbus, whom, plaintiffs allege, violated fiduciary duties that ran directly to them. Defendants correctly argue that they would likely be prejudiced if Frankfurt Garbus were to be added as a party, because these indirect defendants would be sullied by association with entities that are alleged to have actively and knowingly attempted to deprive plaintiffs of their contractual and fiduciary rights.

In sum, plaintiffs have not met their burden of explaining the delay, dispelling the reasonable inference that they had an improper motive in seeking to add Frankfurt Garbus as a party at this stage of the litigation. Adding Frankfurt Garbus would be fundamentally unfair to the existing defendants, who would suffer prejudice greater than that which plaintiffs might suffer by having to refile against Frankfurt Garbus in state court. *See Block*, 988 F.2d at 350. The motion to add Frankfurt Garbus is therefore denied.

**IV.** *Amendments to Conform to the Evidence*

Pursuant to Rule 20(b), the plaintiffs may amend the complaint to conform to evidence produced during the course of discovery.

*Conclusion*

For the reasons set forth below, the motion to amend is granted in part and denied in part. The discovery deadline shall be extended until six months from the date of this opinion.

It is so ordered.