**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**DCI TELECOMMUNICATIONS, INC., Joseph J. Murphy, and Russell B. Hintz, Defendants.**

and

**Grace P. Murphy, Relief Defendant.**

No. 00 Civ. 4664(RWS).

United States District Court, S.D. New York.

April 17, 2002.

Securities and Exchange Commission, by Debra Patalkis, Reid A. Muoio, John J. Field, of counsel, Washington, DC, for Plaintiff.

Greenberg Traurig, by Robert A. Horowitz, Karen Y. Bitar, Toby S. Soli, of counsel, New York City, for Defendants.

### OPINION

SWEET, District Judge.

The plaintiff Securities and Exchange Commission (the "SEC") has moved to (1) amend its complaint pursuant to Rule 15(a), Fed.R.Civ.P.; (2) strike the jury demand of defendants Joseph Murphy, Grace Murphy, Russell B. Hintz, and DCI Telecommunications, Inc. (collectively "DCI") pursuant to Rule 39(a), Fed.R.Civ.P.; and (3) substitute an expert witness pursuant to Rule 16(b), Fed.R.Civ.P. For the reasons set forth below, the motion is granted.

### *Prior Proceedings*

On August 28, 1995, the SEC's Division of Enforcement began an informal investigation

of DCI and requested that DCI produce a variety of documents relating to its financial statements and the "basis for the recording and valuation" of certain assets. In late 1997, the SEC's Division of Corporate Finance began a more intensive review of DCI's financial statements contained in its SEC filings including, among other things, an S–1 Registration Statement DCI filed earlier in the year, and an S–3 Registration Statement filed in early 1998. An exchange of correspondence both to and from the SEC's Division of Corporate Finance concerning the accounting issues continued throughout most of 1998. In October 1998, the SEC's Division of Corporate Finance demanded that DCI restate its financials for its fiscal years ended March 31, 1997, and March 31, 1998, to correct what the SEC contended to be improper accounting for various transactions. After further discussions with the SEC, DCI filed an amended Form 10–K, which included the restated financials, on February 2, 1999.

The SEC began a formal investigation of DCI in February 1999, and served on DCI a subpoena duces tecum. During the formal investigation, the SEC also subpoenaed documents directly from DCI's transfer agent, Nevada Agency & Trust Company ("NATCO").

On May 3, 1999, the SEC ordered a ten-day suspension in trading of DCI stock because of questions regarding the accuracy and adequacy of DCI's financial statements.

In the fall of 1999, the SEC staff advised DCI that it intended to recommend to the Commission that it file an enforcement action primarily based on the alleged accounting irregularities at issue in this action. In the spring of 2000, the SEC staff advised DCI that it also intended to recommend to the Commission that it file an enforcement action based on DCI's issuance of certain S–8 stock to Joseph Murphy and Larry Shatsoff because they sold the stock and delivered the proceeds to DCI.

On June 23, 2000, the SEC filed this enforcement action against DCI alleging securities violations arising out of: (1) an alleged Generally Accepted Accounting Principles (GAAP) accounting fraud with respect to ten distinct corporate transactions; (2) the sale by Joseph Murphy and Lawrence Shatsoff of S–8 stock to the public and their return of the proceeds to DCI; (3) DCI's payment of certain expenses on behalf of Joseph Murphy; and (4) Joseph Murphy's and Russell Hintz's alleged unjust enrichment from the sale of their stock.

On June 13, 2001, the SEC served DCI with requests to admit relating to the issuance of S–8 shares, asking DCI to admit that, among other things, it had issued millions of S–8 shares—some to individuals who were not permitted by law to receive S–8 shares, including defendant Joseph Murphy's father (Joseph Murphy, Sr.), and some pursuant to certain S–8 registration statements that had not been filed with the SEC.

On July 6, 2001, the SEC requested the production of NATCO's S–8 registration file for DCI. The SEC received the S–8 registration file on July 9, 2001.

On October 12, in connection with discovery issues and a request by DCI, the SEC agreed to amend the complaint to allege additional violations of the antifraud and registrations provisions of the securities laws.

The production of NATCO records has been the subject of a dispute that includes NATCO's understanding of the initial SEC subpoena, an action by DCI requiring NATCO to produce its records, and the implications and inferences to be drawn from the production of records by DCI in 1999.

Discovery has been extended and the instant motion was heard and marked submitted on January 16, 2002.

### Discussion

#### I. The Jury Demand Will Be Stricken and Substitution of An Expert Witness is Granted

The submissions on striking the jury demand and the substitution of an expert witness establish that there is no longer a dispute on these matters. These motions are granted, there being no opposition.

#### II. The SEC is Granted Leave to File Its Amended Complaint

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a

pleading "shall be freely given when justice so requires." The Supreme Court has long declared that "this mandate is to be heeded," and that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). This customary freedom to amend is challenged by DCI on grounds of undue delay, bad faith, and undue prejudice, *see Grace v. Rosenstock,* 228 F.3d 40 (2d Cir.2000).

Over six years have passed from the SEC's initiation of its interest in DCI to the instant motion for leave to file an amended complaint. This action was initiated a year and nine months ago, and according to the SEC the critical evidence was not revealed until July 9, 2001. Whether the delay was due to obfuscation, as maintained by the SEC, or ineptitude as alleged by DCI, under the circumstances of this action it is not undue.

In *Monahan v. New York City Department of Corrections,* 214 F.3d 275 (2d Cir. 2000), the defendants, in support of summary judgment motions filed 15 months after the original complaint, asserted *res judicata* as an affirmative defense for the first time. The district court treated the assertion of this argument as a motion to amend the answers, granted the motion to amend, and then granted summary judgment to the defendants based on that defense. The Second Circuit, in approving the district court's decision, stated that the liberal approach embodied in Rule 15(a):

> reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated, *see Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and "mere technicalities" should not prevent cases from being decided on the merits. *See Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9

L.Ed.2d 222 (1962). *See also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1471 (2d ed.1990).

*Id.,* 214 F.3d at 283.

In *Block v. First Blood Associates,* 988 F.2d 344 (2d Cir.1993), the plaintiffs filed their first complaint in November of 1986, and filed an amended complaint in July of 1989. The defendants filed an amended answer on November 5, 1990, nine days before the discovery cut-off, and asserted a statute of limitations defense for the first time. The defendants then moved for summary judgment based on the statute of limitations, and the district court treated that motion as including a motion for leave to amend, granted both motions, and dismissed the complaint. The Second Circuit upheld this decision stating that "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Id.* at 350.

"Furthermore, parties ... have been permitted to amend their pleadings long after they acquired the facts necessary to support those claims." *Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (*citing Howey v. United States,* 481 F.2d 1187, 1188–89, 1191 (9th Cir.1973) (allowing amendment after five-year interval and on second day of trial, stating that "the mere fact that the government could have moved at an earlier time to amend does not by itself constitute an adequate basis for denying leave to amend"); *Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.,* 392 F.2d 380, 385 (2d Cir.1968) (allowing amendment after three-year interval and notice of trial readiness); *Green v. Wolf Corp.,* 50 F.R.D. 220, 223 (S.D.N.Y.1970) (allowing amendment after almost four years where plaintiff was aware of facts asserted in amended complaint from outset of case)).

As to bad faith, there is no showing of malice or any facts beyond those proceedings set forth above. Undue delay, standing alone, does not constitute bad faith.

Prejudice, of course, exists. Additional time, money and effort will be expended to meet this new charge. Given the state of

DCI's existence and the difficulties of locating files, DCI is disadvantaged. The disadvantage, however, is not so substantial as to preclude a defense or to bar the amendment.

DCI cites *Sanders v. Thrall Car Manufacturing*, 582 F.Supp. 945 (S.D.N.Y.1983), *aff'd*, 730 F.2d 910 (2d Cir.1984), in which the movant sought leave to file a third amended complaint to add charges under the Racketeer Influenced and Corrupt Organization Act more than two and a half years after filing the original complaint. However, in that case, the only reason for the delay was counsel's "ignorance of the statute." *Id.* at 952. Such is not the case here.

Nor does the instant action resemble a markedly different and vexatious action heard by this Court, *Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 148 F.Supp.2d 321 (S.D.N.Y.2001). In that case, the motion to amend was denied in part as to proposed new claims that duplicated existing claims, *id.* at 329, and as to proposed new defendants that would have likely destroyed diversity jurisdiction. *Id.* at 330. Neither situation is present here.

With the documents it now has in hand, the SEC maintains that it could file a separate action in this Court on the new claims, which DCI concedes could occur. Additional cost in time, inconvenience and expense to all involved would result. Under these circumstances, "prejudice" under Rule 15(a) has not been established.

*Conclusion*

The motion of the SEC to amend the complaint, strike the defendant's jury demand and substitute an expert witness is granted.

Discovery with respect to the amendments is extended for two months from the date hereof, after which any dispositive motions shall be filed.

It is so ordered.