**BRIARPATCH LIMITED L.P. and Gerard F. Rubin, Plaintiffs,**

v.

**GEISLER ROBERDEAU, INC., Phoenix Pictures, Inc., Michael Medavoy, and Terrence Malick, Defendants.**

**Robert Geisler, John Roberdeau, Briarpatch Film Corp., Briarpatch Theatre Corp., Plaintiffs,**

v.

**Steven V. Pate, Pate & Pate Enterprises, Briarpatch Limited, L.P., Gerard F. Rubin, and "John Does" and "Jane Does," Defendants.**

**Robert Geisler, John Roberdeau, Stage Fright, LLC, Samuel Myers, Briarpatch Construction Corp., Briarpatch Film Corp., Briarpatch Threatre Corp., Briarpatch Releasing Corp. and Sansho Company, Inc., Plaintiffs,**

v.

**Briarpatch Limited, L.P., Gerard F. Rubin, Barry L. Goldin, Richard Brick, "John Does" 1–5 and "Jane Does" 1–5, Defendants.**

**Nos. 99 CIV 9623 RWS, 01 CIV 4767 RWS, 01 CIV 8564 RWS.**

United States District Court, S.D. New York.

March 26, 2002.

Verner Simon, P.C., Attorney for Robert Geisler, John Roberdeau, Briarpatch Film Corp. and Briarpatch Theatre Corp., New York City, By Paul W. Verner, Esq., Of Counsel, Barry L. Goldin, Esq., Attorney for Briarpatch Limited and Gerard F. Rubin, Allentown, PA, for Plaintiffs.

Deyan R. Brashich, Esq., Attorney for Briarpatch Limited and Gerard F. Rubin, New York City, Dewey Pegno & Kramarsky, Attorney for Steven V. Pate and Pate & Pate Enterprises, New York, By David S. Pegno, Esq., Of Counsel, Ingram Yuzek Gainen Carroll & Bertolotti, Attorneys for Richard Brick, New York City, By David G. Ebert, Esq., Of Counsel, Greenberg Traurig, Attorneys for Phoenix Pictures, Inc. and Morris Medavoy, New York City, By Gregory A. Brehm, Esq., Ronald D. Lefton, Esq., Of Counsel, Greenberg Traurig, Attorneys for Phoenix Pictures, Inc. and Morris Medavoy, Santa Monica, CA, By Vincent Chieffo, Esq., Of Counsel, for Defendants.

## OPINION

SWEET, District Judge.

Presently before the Court are eight motions in three lawsuits constituting the most recent convulsion of litigation that has occupied these parties and their lawyers in this Court, the Supreme Court of the State of New York, County of New York, and the Bankruptcy Court, Dallas Division, since 1998. The actions are: *Geisler, et al. v. Briarpatch Limited, L.P., et al.,* 01 Civ. 8564(RWS); *Geisler v. Pate, et al.,* 01 Civ. 4767(RWS); and *Briarpatch Limited, L.P., et al. v. Geisler Roberdeau Inc., et al.,* 99 Civ. 9623(RWS).

The motions include:

(1) A motion by defendants Briarpatch Ltd. L.P. ("Briarpatch Limited" or the "Partnership"), Gerard F. Rubin ("Rubin"), Barry L. Goldin ("Goldin"), and Richard Brick ("Brick"), to dismiss pursuant to Rule 12(b), Fed.R.Civ.P., the complaint of Robert Geisler ("Geisler"), John Roberdeau ("Roberdeau"), Briarpatch Film Corp. ("BFC"), and Briarpatch Theatre Corp. ("BTC") in Civil Action 01 Civ. 8564.

(2) A motion by defendants Briarpatch Limited and Rubin to dismiss pursuant to Rule 12(b), Fed.R.Civ.P., the complaint of Geisler, Roberdeau, BFC and BTC in Civil Action 01 Civ. 4767.

(3) A motion by defendant Steven Pate and Pate & Pate Enterprises (collectively "Pate"), also brought pursuant to Rule 12(b), Fed.R.Civ.P., to dismiss the complaint in Civil Action 01 Civ. 4767.

(4) Plaintiff Samuel Myers' ("Myers") motion for partial summary judgment pursuant to Rule 56, Fed.R.Civ.P., of Civil Action 01 Civ. 8564, with respect to the rights to work entitled "The White Hotel."

(5) Geisler and Roberdeau's cross-motion in Civil Actions 01 Civ. 8564 and 01 Civ. 4767 for the appointment of a receiver and declaratory judgment pursuant to Rule 66, Fed.R.Civ.P.

(6) Briarpatch Limited and Rubin's motion to vacate the clerk's certificate of default pursuant to Rules 4, 12(b) and 55(c), Fed.R.Civ.P., in Civil Action 01 Civ. 4767.

(7) Geisler and Roberdeau's cross-motion in Civil Action 01 Civ. 8564 to disqualify Barry L. Goldin ("Goldin") as counsel pursuant to Disciplinary Rules 5–101, 5–102, 5–105, and/or 5–108.

(8) Geisler & Roberdeau's cross-motion to consolidate all three actions pursuant to Rule 42, Fed.R.Civ.P.

For the reasons set forth below, the motions to dismiss Civil Actions 01 Civ. 8564 and 01 Civ. 4767 are granted. The remaining motions are therefore dismissed.

### The Parties

Briarpatch Limited is a New York limited partnership formed under a Limited Partnership Agreement, dated January 1, 1994, between Rubin as sole limited partner and, as general partners, five companies owned and operated by Geisler and Roberdeau: Briarpatch Construction Corp. ("BCC"); Briarpatch Film Corp. ("BFC"), Briarpatch Theatre Corp. ("BTC"), Briarpatch Releasing Corp. ("BRC"), and Sansho Company, Inc. ("Sansho").

Rubin is the sole limited and winding up partner of Briarpatch Limited. He is a New York resident, as are Geisler and Roberdeau.

Myers is a former attorney of and an associate of Geisler and Roberdeau.

Brick is an independent film producer whose services Geisler and Roberdeau sought prior to 1999 as line producer for a project known as "The White Hotel."

Goldin is counsel to Briarpatch Limited and Rubin.

Pate, a Texas resident and citizen, was an investor who initiated a claim of fraud against Geisler and Roberdeau.

Morris "Mike" Medavoy ("Medavoy") is the founder and chairman of Phoenix Pictures, Inc. ("Phoenix"), and resides in California.

Terence Malick ("Malick") is a writer and director. His films include "The Thin Red Line," "Badlands," and "Days of Heaven."

### Background and Prior Proceedings

Creativity in the film industry is matched by the creativity of counsel to those who seek to obtain properties and create deals. Although the aforementioned parties have managed to create a flood of litigation in this and other jurisdictions, the actions presently before this Court can be characterized as follows:

(1) Civil Action 99 Civ. 9623 (the "Phoenix Action"), initiated by Briarpatch Limited and Rubin, alleges that Rubin made various investments in several projects, including "The Thin Red Line," "The English Speaker," "Sansho the Bailiff," and "The White Hotel," and that Medavoy and Malick committed various wrongdoings with Geisler and Roberdeau in connection with the development of those projects to the injury of Rubin and Briarpatch Limited. Malick is no longer a party to the action pursuant to a stipulation of dismissal dated October 31, 2001, and Geisler Roberdeau, Inc. was dismissed from the action pursuant to this Court's opinion dated March 1, 2001, *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.,* No. 99 Civ.

9623(RWS), 2000 WL 235284 (S.D.N.Y. March 1, 2000).

(2) Civil Action 01 Civ. 4767 (the "Properties Action") involves a settlement made among Briarpatch Limited, Rubin, and Pate. It is alleged by Geisler, Roberdeau, BFC, and BTC that their employment and literary rights, and their copyrights, in the properties "The English Speaker" and "Sansho the Bailiff" have been converted and infringed by Briarpatch Limited, Rubin, and Pate.

(3) Civil Action 01 Civ. 8564 (the "White Hotel Action"), initiated by Geisler, Roberdeau, and their affiliates, concerns Briarpatch Limited's, Rubin's, Goldin's and Brick's alleged interference with a $35 million production contract to make a film from "The White Hotel".[1]

The underlying facts of the relationships between the parties in these three actions have been the subject of several opinions, familiarity with which is assumed. *See Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, 148 F.Supp.2d 321 (S.D.N.Y. 2001); *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, No. 99 Civ. 9623(RWS), 2000 WL 235284 (S.D.N.Y. March 1, 2000); *Briarpatch Ltd., L.P. v. Pate*, 81 F.Supp.2d 509 (S.D.N.Y.2000); *Briarpatch Ltd., L.P. v. Stage Fright LLC*, 86 F.Supp.2d 368 (S.D.N.Y.2000). The facts, which do not appear to be in dispute except as noted, are taken from the pleadings, affidavits, and supporting documents, and also reflect the findings in the state court after trial.

Briarpatch Limited was formed in 1994 with Rubin as the limited partner and five general partners (BCC, BFC, BRC, BTC, and Sansho) owned by Geisler and Roberdeau. The Partnership was formed for the purpose of developing, producing, and presenting and exploiting certain motion picture projects. All five general partners were dissolved by the Secretary of State. Three of the five corporate general partners, BCC, BFC, and BTC, were dissolved by the Secretary of State prior to January 1, 1994, the effective date of the partnership agreement. The other two general partners, BRC and Sansho, were dissolved by the Secretary of State on September 27, 1999 and September 24, 1997, respectively. The Partnership was dissolved upon Rubin's service of his Notice of Dissolution dated December 15, 1998, and Rubin was designated sole winding up partner.

### The State Court Actions

On December 17, 1998, Briarpatch Limited and Rubin filed a complaint in the New York Supreme Court, County of New York, against Geisler and Roberdeau. On March 1, 1999, the Honorable Ira Gammerman issued a preliminary injunction finding that the Partnership's projects included, among other things, "The Thin Red Line," "The White Hotel," "The English Speaker," and "Sansho the Bailiff." Geisler and Roberdeau were enjoined from transferring, pledging, hypothecating, or otherwise disposing of any rights to or in the projects.

On July 12, 1999, after a five-day trial, a thirty-one page decision (the "July 12, 1999 Decision") was issued by the Honorable Harold Tompkins. The decision, in its findings of fact, stated that prior to January 1, 1994, Rubin had an at least $2.8 million investment in "The White Hotel" that had been contributed to Briarpatch Limited; that Rubin had become sole limited partner of the Partnership; that "The White Hotel" had become owned by and a project of the Partnership; and that Geis-

---

1. A final action, Civil Action 01 Civ. 2340(RWS), is no longer pending before this Court. Although cited by the movants in the instant motion to consolidate, the case was remanded to New York State Court by order dated June 6, 2001.

ler and Roberdeau had committed breaches of fiduciary duty, fraud, fraudulent concealment, conversion, misappropriation, and other misconduct with respect to "The White Hotel" and other projects, including their diversion of rights to "The White Hotel." The court found that misrepresentations by or on behalf of Geisler and Roberdeau were made intentionally to conceal and prevent discovery of their misappropriation of the rights and remuneration of the Partnership and of Rubin. Briarpatch Limited, the court found, never had any bank account, and the collections from the properties held by the Partnership were not deposited by Geisler and Roberdeau into a bank account of any general partner, but instead were commingled in accounts of non-partners.

The court concluded as a matter of law that as of January 1, 1994, Briarpatch Limited became the beneficial owner of all rights to projects including, without limitation, "The Thin Red Line," "The White Hotel," "The English Speaker," "Sansho the Bailiff," "Secret Friends," and "Sunday in the Park with George" (the "Projects"), that all rights acquired thereafter with respect to such Projects belonged to the Partnership, and that those rights had vested. The court further concluded that Geisler and Roberdeau breached their fiduciary duties to the Partnership and to Rubin by misappropriating and diverting to themselves and to their affiliates (such as their companies Geisler Roberdeau, Inc., The White Hotel Partnership, and Stage Fright LLC) opportunities, properties, and monies properly belonging to the Partnership with respect to the Partnership's projects, including without limitation "The Thin Red Line," "The White Hotel," "The English–Speaker," and "Peter Pan/ The Boy Castaways." The court found that Geisler and Roberdeau engaged in fraud while acting in a fiduciary capacity to the Partnership and engaged in self-dealing against the Partnership.

The settling order and judgment, entered and docketed October 14, 1999 (the "Order and Judgment"), declared that, as of January 1, 1994, all beneficial rights, title, and interest in the Projects resided with Briarpatch Limited and that all right, title and, interest of Geisler and Roberdeau and their affiliates in the Projects or remuneration "is hereby transferred to and vested, effective immediately in the Partnership." (Verner Aff. Ex. 5, at 2). Geisler and Roberdeau were enjoined from indicating, or misleading anyone into believing, that they or any of their affiliates is a general partner of the Partnership "or has any right, title, or interest in or to any of the projects, as all such rights, title, and interest are vested in and belong to the Partnership." (*Id.* at 3). The court imposed a constructive trust and a constructive lien on all rights of Geisler, Roberdeau, and their affiliates to the Projects (Id. at 2) and ordered the immediate delivery to the Partnership and Rubin of:

> all screenplays, stage plays, treatments, and agreements with respect to the Projects, . . . and all correspondence, notes, memoranda, books and records, and other documents relating to the Partnership or to the Projects since they belong to and are the property of the Partnership.

(*Id.* at 4).

No evidence has been presented in the instant actions to cast doubt on the state court findings and conclusions.

On February 14, 2000, the state court held Geisler and Roberdeau in civil contempt and directed their incarceration, referring to an agreement into which, after the March 1, 1999 preliminary injunction, Geisler, Roberdeau, and Myers had entered with a German company named Constantin relating to "The White Hotel," and to diversion of a $50,000 fee therefrom. The February 14, 2000 decision found:

The Fifty Thousand Dollar ($50,000) fee was for pledging rights to "The White Hotel," and after payment of taxes ..., the remainder ... was paid to Samuel Myers. Mr. Myers was previously for many years counsel to defendant Geisler and Roberdeau, and the Court in its July 12, 1999 decision found that defendants Geisler and Roberdeau were using him as a straw man ...

The diversion of Fifty Thousand Dollars ($50,000.00) fee, the financial manipulation found by the Court in its decision of July 12, 1999, the admitted existence of extensive records ... whose release was blocked by defendants Geisler or Roberdeau and finally the admitted existence of some fifty thousand (50,000) documents that defendants Geisler and Roberdeau decline to produce ... lead this Court to the conclusion that civil contempt is warranted.

(Goldin St. Ex. 11 at 3, 4, 01 Civ. 4767) (citations omitted).

### The Remand Decisions of this Court

Meanwhile, on August 12, 1999, Briarpatch Limited and Rubin had filed in the Supreme Court, State of New York, an action against Samuel Myers, his daughter Claudia Myers, and two Geisler–Roberdeau companies, Stage Fright LLC and Geisler Roberdeau, Inc., that had been involved in "The White Hotel." The action, alleging causes of action for conspiracy to breach fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, an accounting, and a declaratory judgment as to ownership of the "White Hotel" rights, was removed by defendants to this Court and designated as Civil Action 99 Civ. 10022(RWS).

On March 1, 2000, this Court entered an order (the "March 1, 2000 Order") in which it found no diversity jurisdiction (Rubin being a New York domiciliary) and no federal subject matter jurisdiction (as counsel for Geisler Roberdeau, Inc. and

Stage Fright LLC admitted that "those entities did not have standing to raise the copyright issue"), and remanded the action back to the New York Supreme Court of original jurisdiction. *Briarpatch Limited, L.P. v. Stage Fright LLC,* 86 F.Supp.2d 368, 371 (S.D.N.Y.2000).

Two other attempts of Geisler, Roberdeau, and their affiliates to remove that case to this Court were also remanded.

### The Pate Proceedings

In July 1999, Pate commenced a proceeding in the United States District Court for the Southern District of Texas (the "Texas District Court") based on a promissory note for $1,000,000 and security interests that Pate obtained against Geisler and Roberdeau in 1997 in settlement of a lawsuit against Geisler, Roberdeau, and their affiliated entities. Pate had previously sued Geisler and Roberdeau for fraud and other causes of action arising out of fraud perpetrated against him in connection with investments in movie projects. When the parties entered into a settlement at that time, Pate had received the promissory note.

Geisler, Roberdeau, and their related entities breached their obligations under their promissory note, and the parties resolved that breach by entering into a consent judgment in the Texas District Court in the principal amount of the note, $1,000,000, which the court entered on July 17, 1999. Pate then sought to execute on this judgment by bringing an application in the Texas District Court seeking a "turnover" of the defendants' non-exempt property, or in the alternative for a judicial foreclosure of Pate's collateral. In connection with this application, Pate submitted a proposed Turnover Order (the "Turnover Order") to the Texas District Court. Briarpatch Limited and Rubin filed papers in the Texas District Court opposing the relief Pate sought.

The Texas District Court directed that certain rights of the defendants in that action be sold by the United States Marshal. Those rights, as reflected in the court's Unopposed Order Directing Turnover in Aid of Judgment (Doc. 33), Exhibit A, included:

> All of Defendants' rights, title and interest ... in and to those certain screenplays and/or motion picture projects entitled *The English–Speaker, The Thin Red Line, The White Hotel* and *Sansho the Bailiff* (the "Property"). The Property shall also include all of the defendants' rights, title and interest in all screenplay employment agreements with Terrence Malick, as well as all claims and causes of action defendants may hold against Terrence Malick or Phoenix Pictures, Inc.

(Pegno Aff. Ex. E, 01 Civ. 4767). The Notice of Sale, which included the language regarding the "employment agreements," were served on Geisler and Roberdeau by the United States Marshals Service on December 13, 1999, several weeks before the scheduled sale; and the Turnover Order was annexed to their own bankruptcy schedules which they personally signed under the penalty of perjury the month following the sale. The U.S. Marshal sold those rights to Pate at a public sale on January 4, 1999, and the Texas District Court confirmed the sale.

Meanwhile, on July 9, 1999, Rubin and Briarpatch Limited had commenced a lawsuit against Pate in New York state court for declaratory judgment as to the ownership of the rights to certain film projects at issue in Rubin's and Briarpatch Limited's action against Geisler and Roberdeau, including the rights to "Sansho the Bailiff" and "The English Speaker." Pate removed the action to this Court based on diversity. Rubin and Briarpatch Limited moved to amend the complaint to add additional non-diverse defendants and claims, and to remand to state court, which motion

this Court granted on January 20, 2000. The action was removed to federal court again on May 9, 2000, based on the bankruptcy filing of one of the other defendants. The action was remanded to state court on June 23, 2000 upon the dismissal of that bankruptcy. The case took a third trip to this Court on March 16, 2001, when another defendant, Geisler Roberdeau, Inc., removed the action based on its filing of a bankruptcy petition on March 13, 2001 in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, with the express intention of transferring the case to that district; and the action was remanded to state court for a third time on June 6, 2001.

Pate resolved the claims against him by Rubin and Briarpatch Limited during an April 25, 2001 settlement conference in Geisler and Roberdeau's bankruptcy cases. The basic terms of the settlement were put on the record and later embodied in a settlement agreement.

### The Texas Bankruptcy Proceedings and the Properties Action

On February 28, 2000, Geisler, Roberdeau and their company Stage Fright LLC filed Chapter 11 petitions in the United States Bankruptcy Court in Dallas, Texas (the "Texas Bankruptcy Court"). The Texas Bankruptcy Court converted their cases to Chapter 7 cases, and denied them dischargeability. The bankruptcies were assigned to the Honorable Steven A. Felsenthal, U.S.B.J.

Geisler and Roberdeau filed the Properties Action, Civil Action 01 Civ. 4767, on June 1, 2001 against Pate, Briarpatch Limited, and Rubin and amended the complaint on October 4, 2001, alleging that Geisler and Roberdeau obtained rights from Malick "to be employed personally to produce" any film of his script "The English–Speaker" or any theatrical production of Malick's stage play "Sansho the Bailiff" (Am. Compl. at ¶¶ 35, 44). The

complaint also alleges that in April 1998, Geisler and Roberdeau agreed not to proceed with a malpractice action against another attorney in Texas at Pate's request, in reliance on Pate's "promise and reaffirmation of the [their] contractual right" to act as producers of "The English–Speaker." (Am. Compl. at ¶ 75). The complaint further details a meeting in Austin, Texas in August 2000, at which Geisler and Roberdeau assert that Pate promised that these "employment rights ... would be honored." (Am. Compl. at ¶ 77).

Geisler and Roberdeau assert that Pate improperly included their employment rights for "Sansho the Bailiff" and "The English–Speaker" in the Turnover Order that the Texas District Court signed after they defaulted on their settlement obligations to Pate, and that the settlement agreement that Pate, Rubin, and Briarpatch Limited entered into on April 25, 2001 was part of a "conspiracy to wrongfully convert" the employment rights of Geisler and Roberdeau regarding "Sansho the Bailiff" and "The English–Speaker." (Am. Compl. at ¶ 174). The complaint includes claims for copyright infringement, declaratory judgment, conversion and conspiracy to convert, tortious interference with contractual relations, breach of contract, fraud, breach of fiduciary duty and conspiracy to breach fiduciary duty, and a claim for "common law bad faith."

This lawsuit was the subject of recent proceedings before the Texas Bankruptcy Court. Rubin and Briarpatch Limited filed a motion for sanctions for abuse of process against Geisler and Roberdeau arising out of the latter's filing and wide public dissemination of a grievance with the State Bar of Texas against Rubin's and Briarpatch Limited's local counsel. On the eve of the April 25, 2001 settlement conference described above, Geisler and Roberdeau had filed a bar grievance with the State Bar of Texas against Rubin's and Briarpatch Limited's local counsel, and, contrary to the confidentiality procedures established by the Texas Bar, sent it to every person associated with the court-ordered settlement conference as well as the Office of the United States Trustee, United States Department of Justice, and to several attorneys in that office. After an evidentiary hearing, Judge Felsenthal found that Geisler and Roberdeau "used the cover of the grievance process to obtain a collateral advantage before this court and to undermine the settlement process by attempting to chill the advocacy of opposing counsel." (Pegno Aff. Ex. J, at 5, 01 Civ. 4767).

Judge Felsenthal also found that this lawsuit was part and parcel of Geisler and Roberdeau's efforts at harassment of their adversaries:

Following the settlement conference, Roberdeau and Geisler filed a law suit in the United States District Court for the Southern District of New York against the trustee and Passman & Jones, a law firm with whom Seidel practices law ....

In that law suit, Roberdeau and Geisler also sued Stephen V. Pate and Briarpatch and Rubin because those persons settled a law suit pending between them, to which Roberdeau and Geisler were not parties. Pate, Briarpatch and Rubin announced their settlement on the record before this court and then presented it to the United States District Court for the Southern District of New York, where the litigation was pending. It appears that litigation commenced by Roberdeau and Geisler was intended to undermine the settlement of litigation in federal court to which they are not parties, and thereby undermine the integrity of the federal courts themselves.

(*Id.* at 6–7).

Judge Felsenthal directed that Geisler and Roberdeau show cause before him on

August 14, 2001, why an order should not enter finding them in contempt of court and granting related relief, and continued a temporary restraining order it had issued on June 15, 2001, which enjoined them from prosecuting this action. After a hearing, Judge Felsenthal found that this lawsuit was an abuse of process and was intended to "sen[d] the message to parties in interest that they will pay a price if they elect to settle litigation related to Roberdeau and Geisler," and that Geisler and Roberdeau had acted with "calculated deviousness" in committing this wrongdoing. (Pate Mem. Ex. A, at 8, 10, 01 Civ. 4767).

Parties subsequently filed the instant motions. All except the motion to dismiss the Properties Action, Civil Action 01 Civ. 4767, were returnable December 12, 2001, at which time they were deemed fully submitted. The motion to dismiss the Properties Action was returnable January 30, 2002, at which time it was deemed fully submitted.

A search of the United States Copyright Office reveals no copyright registration for "The English–Speaker," or "Sansho the Bailiff." The copyright to "The White Hotel" reverted to the author on July 10, 2001.

### Discussion

#### I. There is No Diversity Jurisdiction Over the Properties Action or the White Hotel Action

The defendants in both the Properties Action (01 Civ. 4767) and the White Hotel Action (01 Civ. 8564) have moved to dismiss the actions for lack of subject matter jurisdiction. The plaintiffs in each of these actions allege that this Court has either diversity or federal copyright jurisdiction. This Court has neither.

In each of the actions, the parties are non-diverse, with New York residents Briarpatch Limited and Rubin, on the one hand, and Geisler and Roberdeau, on the other, opposing one another. It is not disputed that Geisler and Roberdeau, as well as their dissolved companies BFC and BTC, are citizens of New York. This Court has twice held in a related action that Rubin is a citizen of New York. *Briarpatch Limited v. Stage Fright*, 86 F.Supp.2d 368, 371 (S.D.N.Y.2000); *Briarpatch Ltd. LP v. Pate*, 81 F.Supp.2d 509, 511 (S.D.N.Y. 2000). No facts have been adduced on these motions to alter those findings.

There is therefore no diversity jurisdiction over the Properties Action or the White Hotel Action.

#### II. There is No Federal Copyright Jurisdiction

The defendants in both the Properties Action (01 Civ. 4767) and the White Hotel Action (01 Civ. 8564) also contend that no subject matter jurisdiction exists under the Copyright Act, 28 U.S.C. § 1338.

For cases "arising under" particular federal statutes conferring federal jurisdiction, "Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (explaining the well-pleaded complaint rule). Simply including a federal issue in a state cause of action, however, does not in itself warrant federal question jurisdiction. There must be substantial federal question at issue, as opposed to a minor or technical addition to

a state claim. *See D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 99 (2d Cir.2001); *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 762 (2d Cir.1986); *Tasini v. New York Times Co.*, 184 F.Supp.2d 350 (S.D.N.Y.2002).

A district court has jurisdiction of actions arising under the Copyright Act. However, not every action affecting or involving copyright "arises under" the Copyright Act. In *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir.1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435, Judge Friendly enunciated the principles determining federal copyright jurisdiction:

> An action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproduction . . ., or asserts a claim requiring construction of the Act, . . . at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough to meet this last test.

That test was recently reaffirmed by the Second Circuit in *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir.2000).

Following *T.B. Harms*, the courts have long held that a title dispute (whether as to title to a property or to a contract) is a traditional state court property dispute which does not necessarily confer federal copyright jurisdiction. *See Rotardier v. Entertainment Co. Music Group*, 518 F.Supp. 919, 921 (S.D.N.Y.1981) (following *T.B. Harms* and concluding that the "controlling issue involves a dispute over title to a copyright arising from an alleged breach of contract"); *Keith v. Scruggs*, 507 F.Supp. 968 (S.D.N.Y.1981) (action for declaration of ownership interest in copyrights is breach of contract and title dispute and does not confer federal copyright jurisdiction); *see also Elan Associates, Ltd. v. Quackenbush Music, Ltd.*, 339 F.Supp. 461 (S.D.N.Y.1972) (relying on *T.B. Harms* prior to passage of 1976 Copyright Act and concluding that dispute as to ownership rights and proper title to copyrighted property did not confer federal copyright jurisdiction).

This Court has already applied the *T.B. Harms* test in a related case, found that it lacked copyright jurisdiction and thus lacked subject matter jurisdiction, and remanded the case. *See Briarpatch Limited v. Pate*, 81 F.Supp.2d 509, 518 (S.D.N.Y. 2000) ("To the extent this action involves copyright at all, it involves a determination of copyright ownership determined by contracts between, on the one hand, Plaintiffs and the General Partners, and, on the other hand, Pate and the Texas Defendants."). While that decision was issued prior to the Second Circuit's decision in *Bassett*, which clarifies that the *T.B. Harms* analysis turns on what is alleged on the face of the complaint, *see Bassett*, 204 F.3d at 349, the same conclusion is warranted in the instant motions to dismiss.

■ Out of the welter of litigation, one central fact has emerged: Geisler and Roberdeau do not possess any copyrights. Further, whatever dispute has been manufactured involves the ownership of copyright and not any infringement past or future. Geisler and Roberdeau have not established ownership of any copyrights. The state court judgment has determined that all the rights to properties developed by Briarpatch Limited are the property of Briarpatch Limited. The copyright to "The White Hotel" has reverted to the author, and no copyrights are registered

for "The English–Speaker" and "Sansho the Bailiff."

 Geisler and Roberdeau argue that they have brought a suit for infringement. However, conduct does not constitute infringement unless that conduct "conflicts with one of the specific exclusive rights conferred by the copyright statute." *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 448, 104 S.Ct. 774, 791, 78 L.Ed.2d 574 (1984). Those "exclusive rights" apply to reproduction of, preparation of derivative works based on, distribution of copies of, public performance of, or public display of, the copyrighted work. *See* 17 U.S.C. 106. Here, the only purported infringement alleged in either the Properties Action or the White Hotel Action is that Briarpatch Limited and Rubin filed in the United States Copyright Office a copy of the New York Court adjudications and, in the case of the White Hotel Action, served a copy of those New York adjudications on Constantin (whose agreement with respect to "The White Hotel" project was adjudicated to belong to and be property of the Partnership, as described in the state court's October 14, 1999 Order and Judgment). None of the "exclusive rights" (reproduction, preparation of derivative works, distribution, public performance, or public display) was violated by filing the state court adjudications with the Copyright Office or by delivery of those adjudications to Constantin.

Federal subject matter jurisdiction has not been established and the actions are dismissed.

### In the Absence of Jurisdiction, the Remaining Motions are Dismissed

In the absence of jurisdiction, the remaining motions and cross-motions brought under the Properties Action and the White Hotel Action are denied as moot. While it might be challenging to deal with the merits of the causes of action alleged, and the relief sought by the motions, in the absence of jurisdiction, it would be improper. The parties are already before the state court, their appropriate forum.

### Conclusion

For the foregoing reasons, the motions to dismiss the Properties Action (01 Civ. 4767) and the White Hotel Action (01 Civ. 8564) for lack of subject matter jurisdiction are granted. The remaining motions in these actions are accordingly denied. This Court retains jurisdiction over the remaining action, Civil Action 99 Civ. 9623, pursuant to the opinion of this Court issued on March 1, 2000. *See Briarpatch Limited v. Geisler Roberdeau, Inc.*, No. 99 Civ. 9623(RWS), 2000 WL 235284 (S.D.N.Y. March 1, 2000).

It is so ordered.