### In re BRIARPATCH FILM CORP., Debtor.

#### No. 02–40512(ALG).

United States Bankruptcy Court, S.D. New York.

Aug. 14, 2002.

Jerome Lee Davidow, New York City, Proposed Counsel for debtor.

Ware, Snow, Fogel & Jackson, L.L.P., John R. Knight, Houston, TX, Pro Hac Vice for debtor.

Barry L. Goldin, Allentown, PA, Deyan R. Brashich, New York City, for Gerard F. Rubin and Briarpatch Limited, L.P.

Dewey Pegno & Kramarsky, LLP, David S. Pegno, New York City, for Creditor Steven Pate.

Pamela J. Lustrin, New York City, Office of the United States Trustee.

## MEMORANDUM OF DECISION

ALLAN L. GROPPER, Bankruptcy Judge.

This matter came before the Court on the "Motion to Dismiss Case with Prejudice, to Remand Adversary Actions, and to Bar Further Bankruptcy Filing of Briarpatch Film Corp." ("BFC" or "Debtor") filed on behalf of Gerard F. Rubin ("Rubin") and Briarpatch Limited, L.P. ("BLLP"). The movants also seek sanctions against Robert M. Geisler ("Geisler"), John Roberdeau ("Roberdeau"), the Debtor, and Paul Verner/Verner Simon, the erstwhile attorney for Geisler and Roberdeau. Stephen Pate ("Pate"), a creditor, and the United States Trustee joined in the motion to dismiss. The Debtor opposes the motion and filed several affidavits of creditors in its support. The principal parties filed extensive memoranda of law, statements, affidavits, and a comprehensive set of exhibits. The Court grants the motion in large part for the reasons stated below.

## BACKGROUND/FACTS

This case is one chapter in a long, tangled history of litigation before various

State and Federal courts between Rubin and BLLP, on the one hand, and two individuals, Geisler and Roberdeau, and the companies they control, on the other. By way of background, Geisler and Roberdeau were engaged in the production of films. The litigation principally involves the ownership and rights to certain film projects. In 1986, Geisler, Roberdeau, and Rubin formed a partnership (the "Partnership"). From 1986 to 1993, Rubin contributed certain funds to the Partnership and became a limited partner. The Debtor and four other companies controlled by Geisler and Roberdeau were the general partners.

In the first of the lawsuits, Rubin and BLLP sued Geisler and Roberdeau (and several other defendants) in the Supreme Court of the State of New York, alleging that monies were owed from the receipts of *The Thin Red Line*, a successful and critically acclaimed film released in 1998. Geisler and Roberdeau responded with several actions in State and Federal court, all of which appear to relate to the ownership rights and liabilities of the partnership. Rubin and BLLP have also filed several other lawsuits against Geisler and Roberdeau and their companies.

The five State actions that are particularly relevant to the instant motion are as follows:

### The "Main Case"

a.) Briarpatch Limited, L.P. and Gerard F. Rubin v. Robert Geisler and John Roberdeau (and alter egos Briarpatch Film Corp., Briarpatch Construction Corp., Briarpatch Releasing Corp., Briarpatch Theatre Corp., Sansho Company, Inc.), Stage Fright LLC, Geisler Roberdeau Inc., Samuel Myers and Claudia Myers, Supreme Court, New York County, Index No. 606156/98, later consolidated into Index No. 603820/99.

In this case, Rubin and BLLP alleged that they owned rights to the production of several motion picture projects, including *The Thin Red Line*, and sought relief against the named defendants and several other entities not named as defendants but alleged to be "alter egos" of Geisler and Roberdeau. One of these alleged "alter egos" is the Debtor. Following a five-day trial in May and June of 1999, Justice Tompkins of the New York Supreme Court ruled in favor of BLLP and Rubin, finding that Geisler and Roberdeau had committed fraud with respect to partnership property, projects, and proceeds. In an Order and Judgment, dated September 27, 1999, the New York Supreme Court adjudicated that all right, title, and interest of certain projects belonged to and was owned by BLLP and Rubin and rendered a judgment against Geisler and Roberdeau, jointly and severally, in the amount of $1.5 million, plus interest. Insofar as relevant here, the Court also directed an accounting and turnover of certain property and documents, as well as the appointment of a referee in the event that additional sums were due to and from BLLP. The Order and Judgment also provided that all corporations controlled by Geisler and Roberdeau, the affiliates or "alter egos," were enjoined from disposing of any rights or monies owned by BLLP. The original action was consolidated with an action against certain of the companies (not including the Debtor) and Samuel and Claudia Myers alleging conspiracy in connection with another film, *The White Hotel*.

The Order and Judgment contained the following relevant decretal paragraphs:

"ORDERED, ADJUDGED and DECREED that as of January 1, 1994, all beneficial right, title and interest of [and] to film and stage plays entitled The Thin Red Line, The White Hotel,

The English Speaker, Sansho the Bailiff, Secret Friends, Sunday in the Park with George, Beauty and the Beast, and Peter Pan/The Boy Castaways (the 'Projects') resided with plaintiff Briarpatch Limited, L.P. (the 'Partnership'); and it is further

ADJUDGED and DECREED that as between, on the one hand, the Partnership and, on the other hand, defendants Geisler and Roberdeau and their affiliates (including the Partnership General Partners, Geisler Roberdeau, Inc., The White Hotel Partnership, and Stage Fright LLC), (i) all remuneration in connection with the Projects belongs to and should have been and should be paid directly to the Partnership; and (ii) insofar as defendants Geisler and Roberdeau and their affiliates may have acquired, held, or hold any right, title or interest in any of the Projects or remuneration in connection with the Projects all such right, title and interest is hereby transferred to and vested, effective immediately in the Partnership. . . ."

On February 14, 2000, the New York Supreme Court entered a contempt order against Geisler and Roberdeau for violating the Order and Judgment. Entry was delayed as a consequence of the personal bankruptcy filings in Texas of Roberdeau and Geisler (see below). On January 10, 2002, the stay in Texas having been lifted, Justice Moskowitz of the New York Supreme Court issued a further order, giving Geisler and Roberdeau 20 days to purge themselves of contempt. On February 21, 2002, the Appellate Division denied a motion for a stay of the contempt order, and a February 25 hearing was scheduled by the Supreme Court to consider contempt sanctions. This hearing was stayed due to the instant bankruptcy filing on February 22, 2002, and the removal of the Main Case to this Court.

### The Two Cases In Which Debtor is a Plaintiff

b.) Briarpatch Film Corp., Briarpatch Theatre Corp., Sansho Company, Inc., Robert Geisler and John Roberdeau v. Gerard F. Rubin, Supreme Court, New York County, Index No. 6048744/99.

c.) Robert M. Geisler and John Roberdeau, Briarpatch Construction Corp., Briarpatch Film Corp., Briarpatch Releasing Corp., Briarpatch Theater Corp., Sansho Company Inc., Geisler Roberdeau Inc., and Stage Fright, LLC v. Briarpatch Limited, L.P. and Gerard F. Rubin, Supreme Court, New York County, Index No. 604510/01.

In the first case, the Debtor as one of several plaintiffs, apparently all entities that Geisler and Roberdeau control, alleged that Gerard Rubin owed money to BFC and the other plaintiffs for the production of *Sansho the Bailiff* and a workshop at the Brooklyn Academy of Music. In the second case, the Debtor as one of several plaintiffs alleged that Rubin and BLLP were liable to the plaintiffs for $3 million in financing raised for post–1994 projects. On February 20, 2002, Justice Moskowitz dismissed both of these cases on the ground that the plaintiffs, including the Debtor, were collaterally estopped from pursuing the claims because of the Order and Judgment issued in the Main Case. This conclusion was apparently based on the Court's finding in the Main Case that the Debtor and others are alter egos of Geisler and Roberdeau. In both cases, Justice Moskowitz signed an order dismissing the action, but the orders had not yet been incorporated in a judgment at the time of removal to this Court. Rubin and BLLP served Notice of Entry of the order dated March 4, 2002.

### The Two Cases In Which Debtor is a Defendant

d.) Briarpatch Limited, L.P. and Gerard F. Rubin v. Stephen V. Pate, Briarpatch

Film Corp., Briarpatch Releasing Corp., Briarpatch Construction Corp., Briarpatch Theater Corp., Sansho Company, Inc., and Geisler Roberdeau Inc., Supreme Court, New York County, Index No. 603269/99.

e.) Briarpatch Limited, L.P. and Gerard F. Rubin v. D.M. Thomas, D.M. Thomas Ltd., and Briarpatch Film Corp., Supreme Court, New York County, Index No. 603364/01.

Both of these cases were commenced by Rubin and BLLP and relate closely to the subject matter of the Main Case. The first alleges that the defendants owe them damages related to *The English Speaker* and *Sansho the Bailiff* and have no right, title, or interest to these projects. The second alleges that BLLP owns the copyright to *The White Hotel* and that the copyright duration has been tolled or extended for the benefit of the dissolved partnership. In both cases, the complaint was litigated against certain of the defendants, including Geisler and Roberdeau, but the Debtor as defendant neither appeared nor answered. Plaintiffs did not take out a default judgment, and the cases were dormant as against BFC at the time of its bankruptcy filing. These cases were also removed to this Court.

### The Federal Cases

In addition to the five State cases, there have been at least three Federal cases involving the Debtor or its affiliates:

a.) Briarpatch Limited, L.P. and Gerard F. Rubin v. Geisler Roberdeau, Inc., Phoenix Pictures, Inc., Michael Medavoy, and Terence Malick, case no. 99–CIV–9623, 2000 WL 235284 (S.D.N.Y. March 1, 2000) ("The Phoenix Action").

b.) Robert Geisler, John Roberdeau, Briarpatch Film Corp. and Briarpatch Theatre Corp. v. Steven V. Pate, Pate & Pate Enterprises, Briarpatch Limited, L.P., Gerard Rubin, "John Does" 1–5

and "Jane Does" 1–5, case no. 01–CIV–4767, see 194 F.Supp.2d 246 (S.D.N.Y. 2002) ("The Copyright Infringement Action").

c.) Robert Geisler, John Roberdeau, Stage Fright, LLC, Samuel Myers, Briarpatch Construction Corp., Briarpatch Film Corp., Briarpatch Theatre Corp., Briarpatch Releasing Corp. and Sansho Company, Inc. v. Briarpatch Limited, L.P., Gerard F. Rubin, Barry L. Goldin, and Richard Brick, "John Does" 1–5 and "Jane Does" 1–5, case no. 01–CIV–8564, see 194 F.Supp.2d 246 (S.D.N.Y.2002) ("The White Hotel Action").

The Phoenix Action was brought by BLLP and Rubin to recover certain investments incurred by several defendants, including Geisler Roberdeau, Inc. but not including the Debtor. The case was originally filed in New York Supreme Court, then was removed to the Southern District of New York on federal question and diversity grounds. The Copyright Infringement Action was brought by the Debtor as a plaintiff for copyright infringement of the literary work *The English Speaker* and the stage play known as *Sansho the Bailiff.* The White Hotel Action was an action by the Debtor and others as plaintiffs alleging interference with contract for the making of film *The White Hotel.*

All three cases were pending at the time of the bankruptcy petition. On March 26, 2002, Judge Sweet of the Southern District of New York dismissed the Copyright Infringement Action and the White Hotel Action for lack of diversity and subject matter jurisdiction. *Briarpatch Limited L.P. v. Geisler Roberdeau, Inc.,* 194 F.Supp.2d 246 (S.D.N.Y.2002). The cases were closed on March 29, 2002, and no appeal has been entered on the docket. *See* Docket, case nos. 01–CIV–4767, 01–CIV–8564. It is noteworthy that Judge

Sweet's comprehensive opinion reviewed the history of the litigation between the parties and found, among other things, that "No evidence has been presented in the instant actions to cast doubt on the state court findings and conclusions." *Id.* at 250.

The Phoenix Action is apparently still pending before Judge Sweet, but the Debtor is not a party.

### Bankruptcy Filing and Subsequent Removals

On February 22, 2002, the Debtor filed its Chapter 11 petition in this Court. At the time of the filing the Debtor had no business, no assets (other than unsuccessful litigation), and no books of account or financial statements. It had not filed tax returns for over ten years and had no corporate existence, having been dissolved by the Secretary of the State of New York in 1993 for non-payment of taxes. Roberdeau signed the Chapter 11 petition as the Director of the Debtor and Jerrold Weinstein purported to act as counsel.[1] On the day of the filing, Paul Verner, purporting to act for the Debtor, signed notices of the removal to this Court of the five pending State Court cases pursuant to 28 U.S.C. § 1452, which provides for the removal to the district court (and automatic referral to this Court) of any claim or cause of action of which the district court would have general bankruptcy jurisdiction under 28 U.S.C. § 1334. The purported removal of the cases, including the Main Case, stayed the contempt hearing scheduled for February 25, even though these removal petitions were not actually filed until March 1, 2002, after a Rule 1014(b) stay was imposed by the Texas Court on February 26, 2002 (as discussed in the next section). Moreover, it appears that Verner, who purported to act as counsel to and on behalf of the Debtor, had no authority to act for the Debtor. A second removal petition was later filed by Verner as counsel for other parties to the State court actions who purported to effect the removal and to cure the earlier insufficiencies in the petitions. 28 U.S.C. § 1452 provides that "a party" may file a notice of removal to the Bankruptcy Court of a "claim or cause of action...."

Shortly after the filing, the Debtor also filed with the District Court for the Southern District of New York a motion to withdraw the reference of the removed cases and to consolidate all of the cases. On March 27, 2002, Judge Sweet denied the motion with leave to renew after the pending motions in the bankruptcy court are determined.

### Texas Proceedings

As noted above, the parties are also involved in insolvency proceedings in Texas that are relevant in connection with the instant motion. On February 28, 2000, Geisler and Roberdeau, personally, and one of their companies, Stage Fright LLC, filed Chapter 11 petitions in the United States Bankruptcy Court for the Northern District of Texas (the "Texas Bankruptcy Court"). In March 2001, a Chapter 7 petition was also filed on behalf of Geisler and Roberdeau's company, Geisler–Roberdeau, Inc. The cases were consolidated before the Texas Bankruptcy Court and the Chapter 11 proceedings were later converted to Chapter 7. In late 2000 Judge Felsenthal of the Texas Bankruptcy Court entered a nondischargeability judgment against Geisler and Roberdeau in favor of Rubin and BLLP and denied Geisler's and

---

1. Later, Jerome Lee Davidow actually appeared for the Debtor. He filed an application for employment in this Court on April 15, 2002. The application is pending. All oral argument on behalf of the Debtor was by John R. Knight, *pro hac vice*. Written submissions were also filed by Paul Verner, counsel for Roberdeau and Geisler.

Roberdeau's discharge pursuant to a complaint filed by the Chapter 7 Trustee. On September 28, 2000, the Texas Bankruptcy Court also issued an order lifting the automatic stay to permit the litigation in the New York Supreme Court to proceed against Geisler and Roberdeau. During the proceedings the Texas Bankruptcy Court found that Geisler and Roberdeau had engaged in abuse of process, extortion against Rubin and BLLP and others and made a criminal referral against Roberdeau on the ground of forgery of the signature of a law firm on a document filed with the Court.

Further, in a September 4, 2001, Memorandum Opinion and Order and an October 29, 2001 Judgment issued by the Texas Bankruptcy Court, Geisler and Roberdeau were held in contempt for violating a prior order of the Court and a settlement agreement and were sanctioned over $70,000 for abuse of process. The Texas Bankruptcy Court further ordered Geisler and Roberdeau to dismiss the action brought by them in the Southern District of New York (the Copyright Infringement Action, above) and directed the Clerk of the Court not to accept for filing any pleading or paper filed by Geisler or Roberdeau until they had complied with the Court's prior orders. The Order dated October 29, 2001 further provided as follows:

> All courts, state and federal, whether as a matter of law or as a matter of comity and sound judicial administration, are respectfully requested to recognize and honor in their respective jurisdictions the Contempt Findings and this Judgment and each of the orders and judgments therein and herein.

On February 26, 2002, shortly after the instant petition was filed, Rubin and BLLP filed, in the Texas Bankruptcy Court, a motion to transfer the instant case to that Court. They acted pursuant to Bankruptcy Rule 1014(b), which provides that cases of affiliates may be transferred to one district, and that if bankruptcy petitions are filed in different districts by or against the same debtor or the debtor and an affiliate, a motion for a change of venue must be filed in "the district in which the petition filed first is pending." In this case, the first petition was filed in the Northern District of Texas. The Rule further provides that the court having jurisdiction over a later-filed case may take no action in the proceeding until the venue motion is decided. Fed.R.Bankr.P. 1014(b). At a hearing on March 13, 2002 and in an order dated March 21, 2002, Judge Felsenthal modified the Rule 1014(b) stay to permit this Court to proceed and did not rule whether the case should be transferred to the Northern District of Texas, pending an evidentiary hearing.

### Present Motions

In sum, there are now before this Court (i) one Chapter 11 petition filed by a defunct company that acted as a general partner in connection with various enterprises of Geisler and Roberdeau, and (ii) five State cases that were removed to this Court (three of which have largely been determined by the original Court). As noted above, after the Texas Bankruptcy Court modified the stay of Bankruptcy Rule 1014(b), Rubin and BLLP moved to remand the removed actions, to dismiss the Chapter 11 petition, and to impose sanctions. They filed extensive papers and exhibits, and equally extensive responses were filed on behalf of the Debtor. On the issue of remand, Rubin and BLLP initially relied principally on technical defects with respect to the Debtor's compliance with removal procedures. At the time of oral argument, the Court gave both parties additional time to brief the issue whether the removed actions should be remanded on

"any equitable ground." While this briefing was in process, on May 6, 2002, John Roberdeau, who appears to have been the sole principal of the Debtor, died. However, the June 11, 2002 brief on behalf of the Debtor indicates that the Debtor intends to pursue this Chapter 11 case, and that the pending motions require a resolution.

At a hearing on April 26, 2002, all parties agreed that an evidentiary hearing was not required for the resolution of the pending motions.

## DISCUSSION

### I. *Remand of the Removed Cases*

The most straightforward issue in a matter with an obviously tortured background is the remand issue. The attorneys for the Debtor have admitted that their "grand plan" is to gather all of the litigation involving Geisler and Roberdeau and bring it in front of one judge, and they argue against remand because it would frustrate Debtor's goal of trying to bring together all related cases and "save it from prejudice." The Debtor has been given ample opportunity to present its arguments in opposition to the motion to remand, but has given no good reason why equity does not require remand of these cases. For the reasons set forth below, the Court finds that equitable grounds require remand of all of the removed cases to their court of original jurisdiction.

### A. *Remand "On Any Equitable Ground"*

■■■ Section 1452(b) of title 28 of the U.S.Code, governing remand in bankruptcy proceedings, provides:

The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision not to remand, is not reviewable by appeal or otherwise....

Section 1452(b), the bankruptcy remand provision, is broader than § 1447(c), providing generally for remand of matters removed to Federal court, in that § 1452(b) allows the court to remand a case "on any equitable ground." An "equitable" ground is one that is "fair and reasonable." *In re Cathedral of the Incarnation in the Diocese of Long Island,* 99 F.3d 66, 69 (2d Cir.1996). Congress apparently realized that, in some instances, a case over which the bankruptcy court has jurisdiction may nevertheless be more appropriately litigated in another forum. *Pacor v. Higgins,* 743 F.2d 984, 993 (3rd Cir. 1984). "Conservation of judicial resources, avoidance of multiplicity of actions, and considerations of comity are all grounds for remand." *Midlantic National Bank v. Comtek Elec., Inc. (In re Comtek Elec., Inc.),* 23 B.R. 449, 451 (Bankr.S.D.N.Y. 1982). In determining a motion to remand, the court also considers whether the State court is "better able to respond" to a suit involving State law. *Id.*

■■■ In *Drexel Burnham Lambert Group, Inc. v. Vigilant Insurance Co.,* the court listed a number of factors that are frequently considered in determining a remand motion. 130 B.R. 405, 407 (S.D.N.Y. 1991). These factors include:

(1) the effect on the efficient administration of the bankruptcy estate,

(2) the extent to which issues of state law predominate,

(3) the difficulty or unsettled nature of the applicable state law,

(4) comity,

(5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,

(6) the existence of the right to a jury trial, and

(7) prejudice to the involuntarily removed parties.

*Id.* Application of the *Drexel Burnham* factors to each of the removed actions demonstrates that the equitable grounds for remand are overwhelming.

### 1. *The Main Case*

■ Roberdeau used his apparent control over the affairs of the Debtor and other entities to remove the Main Case to this Court on the eve of a hearing to hold him and Geisler in contempt for failing to comply with an order entered by the State Court. The State Court proceedings in the Main Case had reached the stage where the Court had found that Geisler and Roberdeau had committed fraud and had failed to comply with prior court orders. Although the Court ordered an accounting as a means of affording relief to the plaintiffs, the Order and Judgment had determined the issues of liability in favor of the plaintiffs and against the defendants, and remedies were being pursued.

■ Under these circumstances, factors 2, 3 and 4 in the *Drexel Burnham* formulation militate very strongly in favor of remand. State law issues not only predominated in the Main Case; they were determined by that Court. With respect to factor 3, the difficulty or unsettled nature of State law, the question is not whether the issues were difficult or not; the key factor here is that the State court determined them. That brings us to the fourth factor, comity, which alone virtually requires that the Main Case be remanded. Comity is a general principle, applicable in Federal–State as well as international situations, which provides that a court should respect the order and judgments of other courts. *See* 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE §§ 4468– 69 (2d ed.2002). Bankruptcy courts must

respect the orders and judgments of State courts and cannot act as a court of review or appeal as to matters that have been decided by State courts with jurisdiction. This rule has been effectuated through application of the principle of collateral estoppel, *see, e.g., RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1295 (5th Cir. 1995); the principle of res judicata, *In re Maurice,* 21 F.3d 767, 774 (7th Cir.1994); and the *Rooker–Feldman* doctrine, which provides that a Federal court cannot reexamine a State judgment, *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 198–200 (2d Cir.1996). Whatever the rubric, "Bankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction." *Kelleran v. Andrijevic,* 825 F.2d 692, 695 (2d Cir.1987).

The Debtor's advocates point out that after removal, a Federal court has jurisdiction over the action as a plenary matter, and thus treats prior State court orders as orders of the Federal court subject to being reconsidered. As the Debtor argues, prior State orders after removal are at best entitled to be considered law of the case, and the *Rooker Feldman* doctrine does not apply. *See, e.g., In re Diet Drugs Products Liability Litigation,* 282 F.3d 220, 240 (3d Cir.2002); *see also Rekhi v. Wildwood Industries, Inc.,* 61 F.3d 1313, 1317–18 (7th Cir.1995). Moreover, there are cases under the general Federal removal statute, 28 U.S.C. § 1441, that have permitted removal even after entry of final judgment in the State court. *See Resolution Trust Corp. v. Nernberg,* 3 F.3d 62, 66–67 (3d Cir.1993), citing, *inter alia, Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 349, 4 L.Ed. 97 (1816) (Congress "may authorize a removal either before or after judgment"). *See also Baker v. Latham Sparrowbush Assoc. (In re Cohoes Industrial Terminal, Inc.),* 931 F.2d 222, 228 (2d Cir.1991), where the court said, "A bank-

ruptcy court, like any federal court, may entertain a collateral attack on a state court judgment."[2]

However, the fact that a State action may technically be removed at a late stage and even after judgment has been entered does not, in the bankruptcy context, invalidate the principle that the bankruptcy court is bound to respect State court orders and judgments. Bankruptcy Rule 9027(i), governing removal generally, provides, "All injunctions issued, orders entered and other proceedings had prior to removal shall remain in full force and effect until dissolved or modified by the court." The District Court is likewise restrained from acting as an appellate court in reviewing the State proceedings; as the Court emphasized in *RTC v. Nernberg*, the Federal court does not act as an appellate court in reconsidering State judgments: "Rather, the motions that we envision are those in the nature of proceedings under Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or those seeking to reopen to allow Resolution Trust to present issues not previously raised in the state litigation." 3 F.3d at 69. The Debtor's advocates complain bitterly about the State court proceedings, but they do not identify what motions, such as a motion under Rule 59(e), would be available to them today (the Order and Judgment was entered in the State case years ago) or precisely what they would have this Court accomplish, other than to act as a general court of review.

Indeed, review or relitigation of issues already determined by the State court is the principal reason given by the Debtor for filing the instant bankruptcy case and

removing the five actions. Counsel admitted on oral argument that the "grand scheme" for Geisler and Roberdeau is to collect all of the pending suits before one judge, presumably a judge who would be more sympathetic to their position than any other jurist who has heard any of their cases to date. Despite their complaints about the action of the State court, counsel did not explain why the State court did not have jurisdiction and why the appropriate avenue for review is not (or was not) appeal. The Debtor's advocates did not explain why Judge Sweet of the District Court was wrong when he found no evidence to cast doubt on the State court findings and conclusions. Nor did the Debtor explain how bringing all of the cases here would enhance efficiency or judicial economy, where the Main Case and (as will be seen below) two of the other removed cases have been fully adjudicated by the State court and four of the five cases are already pending before Justice Moskowitz. Moreover, counsel virtually admitted that Geisler and Roberdeau are looking for a judge who will take a "new look," which is an impermissible attempt at forum shopping. *See In re New York Trap Rock Corp.*, 158 B.R. 574, 576 (Bankr.S.D.N.Y.1993).

The Debtor argues that the Order and Judgment issued by Justice Tompkins of the New York Supreme Court is interlocutory in that it provided for an accounting and did not finally determine all of the issue in the case. *See* 10 WEINSTEIN, KORN & MILLER, NEW YORK CIVIL PRACTICE: CPLR ¶ 5011.03 (2002 ed.). Even if this Order and Judgment were not final, this court does not have general jurisdiction to review it. *See generally Grieve v. Tamerin,*

---

**2.** As will be further discussed below, the court went on to state: "However, because bankruptcy filings must be made in good faith, an entity may not file a petition for reorganization which is solely designed to attack a judg-

ment collaterally—the debtor must have some intention of reorganizing." 931 F.2d at 228, citing *Carolin Corp. v. Miller*, 886 F.2d 693, 698–702 (4th Cir.1989); *In re Johns–Manville Corp.*, 36 B.R. 727 (Bankr.S.D.N.Y.1984).

269 F.3d 149, 153 (2d Cir.2001); *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 137–38 (2d Cir.1997).

In sum, although after removal this Court may not be fully bound by the State court determinations, the doctrine of comity strongly supports remand, and the Court will exercise its discretion to remand the actions so that the State court can enforce its own orders and, if an appeal still lies from the Order and Judgment, review its own judgments.

Aside from issues of estoppel and the effect of the State court determinations, additional *Drexel* factors militate in favor of remand. With respect to issue (1), the efficient administration of the bankruptcy estate, it would be highly inefficient for this Court to reconsider matters which the State court tried and determined years ago. As for factor (7), prejudice to the other parties, Rubin and BLLP have been attempting for years to obtain the relief ordered by the State court. This Chapter 11 petition was filed on the eve of a contempt proceeding against Roberdeau and Geisler (not the Debtor), which was part of a process to attempt to force them to obey prior court orders. As noted above, it is unlikely that the injunction issued in the Main Case would have any real effect on this Debtor, which is devoid of assets as well as business and corporate legitimacy. But even if it did, it would be highly inequitable to Rubin and BLLP to bring the entire litigation into this court after the State court was attempting to enforce its own judgment. This factor, when combined with all of the other equitable factors set forth above, requires that the Main Case be remanded.

2. *The Cases In Which Debtor Is a Plaintiff*

■ The Debtor or its advocates also removed to this Court two cases in which it is a plaintiff and along with others is seeking substantial damages from Rubin and BLLP on the ground that both Gerard Rubin and BLLP owed them money for financing raised for post–1994 projects. The two cases were initially removed soon after Justice Moskowitz had signed orders determining that the Debtor and the other plaintiffs, as alter egos of Geisler and Roberdeau, are bound by the determinations in the Main Case, and that the cases should be dismissed.

These cases should be remanded for substantially the same reasons that the Main Case should be remanded. The State court has made certain determinations in these cases that this Court cannot and should not review. In the interests of judicial comity and efficient administration, not to speak of comity with the State court, it would be improper to relitigate in this Court a case that has already been dismissed with prejudice. The Debtor protests that a final judgment was not entered in the State action at the moment that the cases were removed. But the entry of judgment was at that point only a ministerial act that would not even have been prohibited by the automatic stay of section 362 of the Bankruptcy Code, had it been applicable. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir.1994). Justice Moskowitz' determinations, even if not incorporated in a final judgment, are entitled to the respect of this Court.

■ There is one factor that distinguishes these two cases from the Main Case. Here the Debtor is a plaintiff and, if one credits the submissions of its advocates, its prospects for a recovery against the defendants are the source of any payment to its creditors. However, even if the New York Supreme Court had not acted, keeping the cases in this Court would not improve the Debtor's prospects

of recovery or help its creditors. In certain circumstances, a debtor may gain additional time to bring certain actions as a consequence of bankruptcy (see, e.g., § 108 of the Code). But removal should not be justified on the ground that the bankruptcy court would be friendlier to the bankrupt as plaintiff. That would be impermissible forum shopping of the type condemned above. As to the possible efficiency of aggregating the various cases before this Court, none is apparent. As the court said in *In re New York Trap Rock Corp.*, *supra*, "[T]he need to centralize litigation involving a debtor in a single forum is at its minimum where claims by, rather than against, the debtor are involved." 158 B.R. at 576. *See also Renaissance Cosmetics v. Cassini*, 2000 WL 890191 at *1, 2000 U.S.Dist. Lexis 9198 at *3 (S.D.N.Y. July 5, 2000), citing *Drexel*, 130 B.R. at 408, where the court noted that every claim of a debtor is an asset of the estate, and that fact alone is not sufficient to warrant retention of Federal jurisdiction in opposition to a motion to remand on equitable grounds.

### 3. *Cases In Which Debtor Is a Defendant*

■ The Debtor or its advocates also removed two actions brought against the Debtor and numerous other parties in which the Debtor was named as a defendant but had neither appeared nor answered. Indeed, the case was dormant as far as this Debtor is concerned, and the plaintiffs had never attempted to take out a default against the Debtor. It is not disputed that the subject matter of these cases is related to the Main Case, and that judicial time and effort has been expended on at least one of the cases. Thus, of the factors in *Drexel*, (1) efficient administration, and (4) comity, weigh heavily in favor of remand.

Factors (5) and (7) also weigh strongly in favor of remand. These cases are remote as far as this bankruptcy is concerned, in that they are being litigated by the plaintiffs against other defendants. The Debtor, a dissolved corporation with no assets, is only one of many defendants in these actions. A possible result of removal would be that this Debtor would become a real party in interest, a result that could not possibly benefit its creditors or other parties in interest.

As for factor (7), prejudice to other parties, the State court litigation is ongoing as to the principal parties in interest. Counsel for one of these parties in fact appeared before this Court and asked to be relieved on the ground that her client could no longer pay the bills. For equitable reasons, under the circumstances here, these cases should also be remanded to the court of original jurisdiction.

### B. *Other Grounds for Remand.*

Rubin and BLLP also rely on several technical grounds for remand. First, they argue that the first removal petitions were improper in that (i) they were signed by Paul Verner, who was not appointed (and has not been appointed) as counsel for the Debtor and (ii) they were filed in the District Court after the effectiveness of the Rule 1014(b) stay imposed by virtue of the motion to transfer proceedings to Texas. They argue that the Debtor had neither appeared nor answered in the Two Cases in Which Debtor is a Defendant, that the Debtor was not even a party in the Main Case, and that these cases were not properly removed.

The equitable grounds for remand are strong in this case but the technical grounds are not. In a series of subsequent removal petitions filed on April 3, 2002, the Debtor's advocates appear to have cured their earlier omissions. These

removal petitions were filed after the Texas Bankruptcy Court vacated the stay, and they were filed on behalf of parties in the various lawsuits, thus satisfying the requirement of 28 U.S.C. § 1452(a) that "a party" to a civil action remove a claim or cause of action to the bankruptcy court. *See Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660 (4th Cir.1985).

## II. *Dismissal of the Bankruptcy Case*

■ Rubin and BLLP have also moved to dismiss this Chapter 11 case on the ground that it is a bad faith filing and should be dismissed. In support of this branch of their motion, they rely principally on the fact that Geisler and Roberdeau have a history of contempt of court orders, and that this Debtor was defunct and inactive for years until Geisler and Roberdeau used their control over its affairs to file a petition and remove State cases in order to prevent the State court from exercising its jurisdiction. The Debtor has interposed two principal responses. First, the Debtor and its advocates claim that this filing is part of a good faith attempt to assemble the various litigations before one judge who (it is hoped) will be more sympathetic to them than all prior judges. This attempt at forum shopping cannot be countenanced, for the reasons stated above. More to the point, the Debtor argues that it is in good faith attempting to collect the proceeds of litigation (the Two Cases in Which the Debtor is a Plaintiff) and of its other film rights and distribute them to its creditors. In support of this position, the Debtor has obtained the affidavits of several creditors who ask the Court to sustain the petition so that the Debtor can collect some funds and pay them their debts.[3]

The most recent decision of the Second Circuit on the question of dismissing a Chapter 11 petition as a "bad faith" filing is *In re C–TC 9th Avenue Partnership*, 113 F.3d 1304 (2d Cir.1997). There the Second Circuit found that the debtor had filed under Chapter 11 solely to frustrate the legitimate efforts of a secured party to foreclose on the debtor's only asset, that the debtor had not paid its property or other taxes, and that the debtor had taken no other action in the case for more than a year after the filing. The Court particularly stressed that the bankruptcy court had found that "the primary function of the petition was to serve as a litigation tactic" and that the underlying dispute "could be fully resolved in a non-bankruptcy forum." 113 F.3d at 1309, 1310. It quoted from its prior decision in *Baker v. Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir.1991), which held that a Chapter 11 case is properly dismissed on grounds of bad faith where "on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from the bankruptcy proceedings." The *C–TC 9th Ave. Partnership* court also quoted with approval *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849 (Bankr.S.D.N.Y.1984). There the court dismissed a Chapter 11 petition as a bad faith filing on the ground that the " 'debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating,' and that the 'debtor is unable to propose a meaningful plan of reorganization until its litigation . . . is resolved,' [and that it is] 'evident that the debtor seeks to use this court not to reorganize but to relitigate. This is an

---

**3.** At the same time, Rubin and BLLP, who are likely the Debtor's largest creditors, and another large creditor of the Debtor, Stephen V. Pate, support the motion to dismiss and to remand.

impermissible use of Chapter 11.'" 113 F.3d at 1310, quoting 36 B.R. at 850.

■■■■■ There is no question that a motion to dismiss a Chapter 11 petition should be granted "sparingly." *Carolin Corp. v. Miller*, 886 F.2d 693, 694 (4th Cir.1989); *In re Johns–Manville Corp.*, 36 B.R. 727, 737 (Bankr.S.D.N.Y.1984). However, application of the principles of *C–TC 9th Ave. Partnership* and *Cohoes* to the instant matter demonstrates that this Chapter 11 petition must be dismissed. The Debtor has admitted that its fundamental purpose in filing the instant petitions and removing the various lawsuits is to relitigate. John R. Knight, who appeared for the Debtor *pro hac vice* on the motion, also filed a Response and Opposition to the motion on behalf of "party in interest" Robert M. Geisler. Geisler's admission is "BFC's bankruptcy was filed on February 22, 2002 not to interfere with the further hearing in the state court for February 25, 2002 [to hold him and Roberdeau in contempt], but to stay the settlement and implementation of the oral order of dismissal (on February 20, 2002) of BFC's claim against BLLP and Rubin." (P. 22) [4] Whether or not the incarceration hearing scheduled for the next business day played no role in Roberdeau and Geisler's strategy, it is not a permissible exercise of bankruptcy jurisdiction for an entity to file to avoid an adverse State court judgment that is about to be entered against the entity's claims as plaintiff in a lawsuit. It is unquestionably true, as Geisler argues, that many bankruptcy petitions are filed in order to gain the benefit of the automatic stay and stay the effect of lawsuits, usually suits against the debtor. *See, e.g., In re*

*234–6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr.S.D.N.Y.1997). It is a fundamental purpose of bankruptcy to stay creditor actions that seek to dismember a debtor's property and preserve value for the benefit of all those interested in its estate. *In re NextWave Personal Communications, Inc.*, 244 B.R. 253, 266 (Bankr.S.D.N.Y.2000); *see also In re AP Indus., Inc.*, 117 B.R. 789, 798 (Bankr. S.D.N.Y.1990).

■■■■■ But it is not true, as Geisler further argues without citation to authority, that the automatic stay can be used to prevent the entry of judgment against the debtor on a lawsuit in which its rights as plaintiff have been fully litigated. It has often been stated that the automatic stay is a shield, not a sword. *Int'l Distribution Centers, Inc. v. Walsh Trucking Co.*, 62 B.R. 723, 730 (S.D.N.Y.1986) (citing *Foerst v. Clowser*, 39 B.R. 883, 886 (Bankr. E.D.Va.1984)). If the Debtor was dissatisfied with the State Court's disposition of the Two Suits in Which the Debtor is a Plaintiff, its remedy was to appeal, not to file a bankruptcy petition.

■■■■■ Other than to relitigate, there is no other evident reason for the petition. All of the property claimed by the Debtor in its schedules filed with the Court is the subject of its unsuccessful State court litigation in the Main Case.[5] This is not a case where the debtor has an ongoing business and is in good faith attempting to gain time to appeal or avoid the consequences of an inability to obtain a supersedeas bond. In some circumstances, a Chapter 11 petition may be sustained in order to

---

**4.** Geisler also concedes that "We agree, of course, that a bankruptcy may be dismissed for 'bad faith'." (p. 19)

**5.** The only assets listed in the Debtor's schedules are "Contingent and Unliquidated Claims

and Counterclaims," "Partial Ownership of Properties Held by Briarpatch Ltd." and "Partial Ownership of North American and Japanese Distribution Rights to *Secret Friends*."

permit a debtor to effect an appeal or to avoid dismemberment because of an inability to file a supersedeas bond. See this Court's opinion in *In re Sletteland*, 260 B.R. 657, 663 (Bankr.S.D.N.Y.2001), and cases cited. But this Debtor can take any appropriate appeal of Justice Moskowitz' orders in the Two Cases in Which the Debtor is a Plaintiff without filing an appeal bond, as it is the plaintiff. Even if it were a defendant, at this time it has no property against which a plaintiff could execute and no business that would be at risk.

John Roberdeau submitted an affidavit in support of the petition in which he states, "It is absolutely false that the BFC bankruptcy filing was made 'to delay and obstruct an incarceration hearing scheduled for ... February 25, 2002....' Motion, at 5, para. 2. Instead, the filing was made to enable BFC to pay its creditors to the maximum extent possible." Even if one credits these statements, a Chapter 11 petition cannot be sustained merely by reciting a desire on the part of a debtor to pay its creditors. In a case such as this, there must be some basis for concluding that the bankruptcy filing will help attain this goal. The Debtor or its advocates say the filing could help the creditors get paid by avoiding Justice Moskowitz' dismissal of the Two Actions in Which the Debtor is a Plaintiff. As the Second Circuit held in *C–TC 9th Ave. Partnership*, however, it is bad faith to file a Chapter 11 petition simply in order to relitigate a matter determined by another court.

It is also relevant that at the time the petition was filed, the Debtor was a corporation that had been dissolved nine years before for failure to pay State taxes. It had engaged in no business for years, and in fact had been repurchased by Roberdeau at the foreclosure sale of certain property that took place in connection with the Texas Bankruptcy Case. The Debtor appropriately argues that a dissolved corporation can file a bankruptcy petition. The Second Circuit so held with respect to a dissolved Connecticut corporation in *In re Martin–Trigona*, 760 F.2d 1334, 1342–43 (2d Cir.1985) and with respect to a dissolved New York corporation in *In re Cedar Tide Corp.*, 859 F.2d 1127, 1128, 1132 (2d Cir.1988). Although this Debtor is a New York Corporation, like the debtor in *Cedar Tide*, the resemblance stops there. In *Cedar Tide*, the debtor had continued to engage in business up to the time of the Chapter 11 filing and reinstated itself within a few months of the filing. 859 F.2d at 1128. Here, this Debtor has not filed any tax returns in approximately twelve years, has apparently not engaged in business for a similar period, and although its advocates stated in their papers that it would take steps to pay the overdue taxes and reinstate itself as a corporation, nothing has been submitted to the Court to indicate that it has done so. *See also In re Syndicom Corp.*, 268 B.R. 26, 54 (Bankr.S.D.N.Y.2001) (facts justifying dismissal on bad faith grounds include that the debtor has no business and is no more than a corporate shell, and is apparently being used for its shareholders' private purposes).

In sum, the evidence is overwhelming that this Debtor has no cognizable intent to reorganize but filed the Chapter 11 petition in order to relitigate issues already determined in the State court. In the event that the State court dismissal of the Two Actions in Which the Debtor is Plaintiff is reversed and the Debtor obtains a windfall, it can become the subject of a bankruptcy filing, voluntarily or involuntarily, if its creditors believe a proceeding would be useful to distribute proceeds. Similarly, in the event that Rubin and BLLP attempt to take out a default judgment against this defunct corporation in

connection with the Two Cases in Which the Debtor is a Defendant, it could conceivably file a Chapter 7 petition, although it is uncertain for what purpose. At the present time the petition should be dismissed as a bad faith filing. In light of the above, the Court will not bar further filings by this Debtor; if any filing were to take place without justification, appropriate sanctions would be imposed at that time.

### III. *Sanctions*

Rubin and BLLP also seek sanctions against the Debtor, Geisler and Roberdeau, and their counsel, Paul Verner. Ordinarily, sanctions should be sought after a disposition of the action. Fed.R.Bankr.P. 9011(c)(1)(A). In addition, the death of John Roberdeau during the pendency of the instant motion requires, in good faith, additional briefing on the question of sanctions. Accordingly, the motion for sanctions is denied without prejudice to renewal for good cause shown upon papers filed within 30 days of the date of entry of an appropriate order effectuating this decision.

### IV. *Conclusion*

For the reasons stated above, each of the State Actions is remanded. This Chapter 11 filing is dismissed as a bad faith filing. Rubin and BLLP may renew their request for sanctions as set forth above. Rubin and BLLP are directed to settle an appropriate order on five days' notice.